BALTIMORE FOUNDRY AND MACHINE CORPORATION (SUCCESSOR TO HARRISON BOLT & NUT COMPANY), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7087. Promulgated October 21, 1946.

*Charles B. McInnis, Esq.*, for the petitioner.
*Albert H. Monacelli, Esq.*, for the respondent.

MURDOCK, *Judge*: The Commissioner determined a deficiency in income tax of the Harrison Bolt & Nut Co. in the amount of $139.83 for the fiscal year ended August 31, 1942, and a deficiency in excess profits tax for that same period in the amount of $2,617.26. The petitioner concedes that it is liable, following a merger, for the deficiencies in question if they were properly determined. The facts have been stipulated.

The controversy involves only the deficiency in excess profits tax and not the deficiency in income tax. It is rather unusual and relates entirely to the computation of the tax. The relevant portion of the computation, as set out in the statement accompanying the notice of deficiency, is as follows:

Total excess profits tax_____ $54,037.93
Less: Excess profits tax previous assessed_____ $64,779.57
Less: Previous allowance: Credit under Section
   3806 (b) _____ 13,358.90
                                         51,420.67

Deficiency of excess profits tax_____ $2,617.26

The petitioner's assignment of error is as follows:

In computing the excess profits tax liability of the Harrison Bolt & Nut Company, the Commissioner erroneously reduced the excess profits tax previously assessed by an amount of $13,358.90, alleged to represent a credit under Section 3806 (b) of the Internal Revenue Code, being the amount of excess profits tax assessed against the Harrison Bolt & Nut Company with respect to a refund of excess profits in the amount of $20,000.00 as a result of the renegotiation of that company's war business for its fiscal year ended August 31, 1942; whereas, the correct amount of excess profits tax assessed with respect to the said refund of $20,000.00 was only $11,358.90.

The excess profits tax returns of Harrison Bolt & Nut Co. (hereinafter referred to as Harrison) for the period in controversy, were filed with the collector of internal revenue at Newark, New Jersey. The total tax shown to be due on those returns was $64,779.57. The parties are in agreement that the correct excess profits tax liability of Harrison Bolt & Nut Co. for the period here in question is $54,037.93. The question is how much of it remains as a deficiency to be later assessed and collected. The respondent contends that $13,358.90 of the amount shown on its returns and heretofore paid has actually been used under section 3806 (b) for the petitioner's benefit as an offset against $20,000 of excessive profits which the petitioner otherwise would have had to pay in full to the Secretary of War and, conse-

quently, the tax previously assessed and shown on the returns should be reduced by a credit of $13,358.90 in determining the deficiency as defined in section 271 (a).

The definition of a deficiency, as contained in section 271 (a), as it applied to the period here in controversy (see section 728), was as follows:

The amount by which the tax imposed by this chapter exceeds the amount shown as the tax by the taxpayer upon his return; but the amount so shown on the return shall first be increased by the amounts previously assessed (or collected without assessment) as a deficiency, and decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax; * * *

Was $13,358.90, or only $11,358.90, "abated, credited, refunded, or otherwise repaid in respect of such tax"?

Harrison was renegotiated by the War Department for its fiscal year ended August 31, 1942, and, as a result, it finally entered into an agreement, with representatives of the Secretary of War authorized to carry on renegotiation, that its profits for the period were excessive to the extent of $20,000 and should be refunded. Harrison requested the collector of internal revenue at Newark, New Jersey, to furnish a statement of the amount of the tax credit to which it would be entitled under section 3806 (b) (1) upon the elimination of excessive profits of $20,000 from its income for the fiscal year ended August 31, 1942. The internal revenue agent in charge at Newark responded by a letter and also sent a letter to the renegotiating authority. He stated in each letter that Harrison would be entitled to credits as follows:

| | |
|---|---:|
| Income tax and surtax, Chapter 1 | $2,573.42 |
| Surtax, Chapter 2A | None |
| Declared value excess profits tax, Chapter 2B | None |
| Tax under Chapter 2D | None |
| Excess profits tax, Chapter 2E | 11,358.90 |
| Aggregating | 15,932.32 |

Thereupon, Harrison and the renegotiating authority entered into their agreement, and the renegotiators, in final settlement under the agreement, credited the petitioner with $15,932.32 and actually collected only the difference of $4,067.68. The renegotiating authorities, by a letter dated January 3, 1944, notified the internal revenue agent in charge at Newark that the renegotiation settlement with Harrison had been concluded and a credit of $15,932.32, as set forth in the agent's letter of November 20, 1943, had been allowed against the excessive profits of $20,000 to be collected under the final renegotiation agreement.

The following was placed on the face of Harrison's excess profits tax return for the period here in question by means of a stamp and pen at some date not shown by the stipulation:

INT. REV. AGT. IN CHARGE

NEWARK DIVISION

| | |
|---|---|
| Credit Sec. 3806 (b), I. R. C_____ | $15,932.32 |
| Tax Year Aug. 31, 1942 | |
| Chap. 2A_____ | None |
| Chap. 2B_____ | None |
| Chap. 2D_____ | None |
| Chap. 2E_____ | 13,358.90 |
| Notification date Jan. 3, 1944 | |

The internal revenue agent in charge at Newark wrote a letter dated September 22, 1944, to the renegotiating authority, stating that a typographical error had been made in the agent's previous letter of November 20, 1943, indicating total credits of $15,932.32, whereas it should have indicated total credits of only $13,932.32, and asking to be advised whether the renegotiation discussions could be reopened to correct the error. The agent was advised by a letter dated October 6, 1944, that the renegotiation proceedings could not be reopened.

Section 3806 (a) (1) provides that income of any year involved in renegotiation shall be reduced by the amount of excessive profits eliminated and repaid under the renegotiation. Subparagraph (b) (1) provides that this adjustment shall be made by crediting against the amount of excessive profits eliminated the amount by which the tax for the year subject to renegotiation is decreased by reason of the application of (a) (1). The revenue agent gave incorrect information and a mistake was made in the renegotiation settlement with Harrison for the year here involved. There was credited against the amount of excessive profits eliminated $2,000 more than the amount by which the tax should have been decreased as a result of reducing income for that year by $20,000. The petitioner received the full benefit of the credit. That matter has been closed and can not be reopened. We are concerned, however, with a correct interpretation of section 271 (a). It provides that the amount shown as the tax on the return shall be decreased by the amounts previously abated, credited, refunded, or otherwise repaid in respect of such tax. The $2,000 here in question of the amount of tax shown on the return was credited or otherwise repaid. It does not make any difference, for present purposes, whether it was incorrectly credited or repaid. *Austin Co.*, 8 B. T. A. 628; affd., 35 Fed. (2d) 910; certiorari denied, 281 U. S. 735; *Burnet* v. *Porter*, 283 U. S. 230, affirming *J. I. R. Henry*, 13 B. T. A. 279; *Joseph P. Levy et al., Executors*, 18 B. T. A. 337; affd., 48 Fed.

(2d) 725; *Etta Craig, Executrix,* 18 B. T. A. 86; and *Edmond A. Hughes,* 21 B. T. A. 1075. The fact of the matter is that the petitioner has received the full benefit of the crediting or repayment through a reduction of $2,000 in the amount which it otherwise would have had to pay in the renegotiation proceeding. The tax shown on the return should be decreased by that credit in computing the deficiency under 271 (a). The Commissioner has not erred.

Reviewed by the Court.

*Decision will be entered for the respondent.*