*Decision will be entered under Rule 50.*

MORRIS KURTZON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 29746. Promulgated March 21, 1952.

*Lee Winfield Alberts, Esq.*, for the petitioner.
*Paul Levin, Esq.*, for the respondent.

**OPINION.**

BLACK, *Judge:* The issue in this proceeding is whether there is a deficiency in petitioner's income tax for the year 1945, and, if so, how much. Our preliminary statement shows how the Commissioner determined the deficiency.

Petitioner contests the deficiency on the following grounds: (1) there is no deficiency as defined in section 271 of the Internal Revenue

Code in petitioner's income tax for the year 1945, and the excess of refunds by the Commissioner over taxes paid cannot be collected by the Commissioner through the deficiency process; and (2) petitioner is not properly chargeable on his income taxes for the year 1945 with the alleged contract renegotiation tax credit under section 3806 of the Internal Revenue Code in the amount of $5,007.60.

Respondent on his part contends that the deficiency as he has determined it falls within the definition of "deficiency" contained in section 271 of the Code. He concedes that as to $2,047.59 of the deficiency he erred.

There is really no dispute between the parties as to the facts. The differences between them arise from their differences in the interpretation of certain statutory provisions.

### Petitioner's Ground 1.

Petitioner has a 20 per cent interest in the profits and losses of the partnership, Garcy Lighting Company, which derived considerable income during 1945 from the United States Government contracts and subcontracts subject to renegotiation. On June 12, 1947, the Government determined unilaterally that the partnership had excessive profits for 1945 in the amount of $120,000. This amount was reduced by tax credits of $31,983.64 computed under section 3806 of the Code which is printed below.[1] Accordingly, the United States filed a claim with the partnership's receiver for the net excessive profits

---

[1] SEC. 3806. MITIGATION OF EFFECT OF RENEGOTIATION OF WAR CONTRACTS OR DISALLOWANCE OF REIMBURSEMENT.

    (a) REDUCTION FOR PRIOR TAXABLE YEAR.—

        (1) EXCESSIVE PROFITS ELIMINATED FOR PRIOR TAXABLE YEAR.—In the case of a contract with the United States or any agency thereof, or any subcontract thereunder, which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excessive profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as "prior taxable year") is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated. * * *

        *       *       *       *       *       *       *

    (b) CREDIT AGAINST REPAYMENT ON ACCOUNT OF RENEGOTIATION OR ALLOWANCE.—

        (1) GENERAL RULE.—There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the application of paragraph (1) of subsection (a) : * * *

        *       *       *       *       *       *       *

    (c) CREDIT IN LIEU OF OTHER CREDIT OR REFUND.—If a credit is allowed under subsection (b) with respect to a prior taxable year no other credit or refund under the internal revenue laws founded on the application of subsection (a) shall be made on account of the amount allowed with respect to such taxable year. If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the excess shall, for the purposes of the internal revenue laws relating to credit or refund of tax, be treated as an overpayment for the prior taxable year which was made at the time the payment, repayment, or offset was made.

refunds of $88,016.36, plus interest, on January 30, 1948. This claim was paid on October 18, 1949.

Section 3806 (a) (1) provides that income of any year involved in renegotiation shall be reduced by the amount of excessive profits eliminated and repaid under the renegotiation. Subsection (b) (1) provides that this adjustment shall be made by crediting against the amount of excessive profits eliminated the amount by which the tax for the year, subject to renegotiation, is decreased by reason of the application of (a) (1). Subsection (c) provides that "If a credit is allowed under subsection (b) with respect to a prior taxable year no other credit or refund under the internal revenue laws founded on the application of subsection (a) shall be made on account of the amount allowed with respect to such taxable year. * * *"

The rationale behind the tax credit is that income taxes have been paid on income, which, in later years, must be refunded as excessive profits pursuant to the renegotiation law. The tax credit must be computed by reducing gross income, and hence net income, in the year in which the excessive profits were reported originally; no deduction is to be allowed in any other year.

Of the $120,000 found to be excessive profits in 1945, a total of $44,258.80 was reported on the 1945 individual income tax returns of all the partners. Petitioner reported 20 per cent of this amount, or $8,851.76. Petitioner paid income tax of $5,007.60 on his share of the excessive partnership profits in 1945. Therefore, since the net excessive profits refunds were paid to the United States, it becomes necessary to adjust petitioner's 1945 taxes accordingly. Apparently the parties are in agreement up to this point. In the deficiency notice the respondent allows petitioner an additional deduction of $8,851.76 partnership income before computing 1945 net income, which adjustment is not contested. However, in 1948 after the renegotiation refund claim was filed but before it was paid by the partnership's receiver, petitioner received a refund of $11,242.83 representing all 1945 income taxes due to his claim based on a carry-back of a 1947 net operating loss. Now respondent has determined that since petitioner received refunds of all 1945 taxes, the tax credit under section 3806 exceeds by $5,007.60 the amount allowable and constitutes a deficiency.

The question, therefore, is whether $5,007.60 of the deficiency which respondent has determined falls within the statutory definition of "deficiency" contained in section 271 of the Code.[2] If it does not,

[2] SEC. 271. DEFINITION OF DEFICIENCY.

(a) IN GENERAL.—As used in this chapter in respect of a tax imposed by this chapter, "deficiency" means the amount by which the tax imposed by this chapter exceeds the excess of—

(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the

then, of course, there can be no deficiency to that extent. It will be noted that section 271 (a) defines a deficiency as the amount by which the correct tax imposed *exceeds the excess* of the following: the amount of tax on the return, plus prior assessments, minus rebates. Reduced to mathematical terms, the statutory definition would appear as follows:

Deficiency = correct tax − (tax on return + prior assessments − rebates)
= correct tax − tax on return − prior assessments + rebates

A similar statement of the definition, which contains a double negative, is the correct tax imposed, plus rebates, minus the tax on the return, minus prior assessments.

The correct tax for 1945 is stipulated to be zero because of the carry-back of the 1947 net operating loss. There were no prior assessments. The tax shown on the return is $11,242.83. Rebates are defined in section 271 (b) (2), *supra.* The taxpayer was refunded $11,242.83 on his application for the loss carry-back, which sum is clearly a rebate. The renegotiation tax credit of $5,007.60 is also a rebate within section 271 (b) (2). *Baltimore Foundry & Machine Corporation*, 7 T. C. 998; *Stow Manufacturing Co.*, 14 T. C. 1440, affd. 190 F. 2d 723, certiorari denied 342 U. S. 904.

Going back to the statutory definition of deficiency, the deficiency in this proceeding is the amount of rebates ($11,242.83 plus $5,007.60) minus the tax on the return ($11,242.83). In other words, there is a deficiency of $5,007.60. We so hold.

### Petitioner's Ground 2.

Petitioner raises Ground 2 by contending that he is not properly chargeable on his income taxes for the year 1945 with the alleged contract renegotiation tax credit under section 3806 of the Internal Revenue Code in the amount of $5,007.60. In support of his contention, petitioner in substance says: The renegotiation claim which the War Contracts Price Adjustment Board had was one against Garcy Lighting Company, a partnership, and it was not against petitioner, except in the derivative sense that petitioner is liable for his share of the debts of the partnership. Petitioner continues by saying this obligation is now in the process of being litigated in a partnership accounting suit in the Circuit Court of Cook County, Illinois, and until that court reaches a determination the obligation of petitioner is not fixed.

---

taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—

(2) the amount of rebates, as defined in subsection (b) (2), made.

(b) RULES FOR APPLICATION OF SUBSECTION (a).—For the purposes of this section—

\* \* \* \* \* \* \*

(2) The term "rebate" means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by this chapter was less than the excess of the amount specified in subsection (a) (1) over the amount of rebates previously made; \* \* \*

The stipulated facts show that the Garcy Lighting Company, a partnership in which the petitioner was a partner, received on behalf of the petitioner a credit under section 3806 of the Code in the amount of $5,007.60. The credit was based upon a computation made with respect to that portion of the excessive partnership profits reported by the petitioner on his 1945 income tax return.

The above facts being what they are, we think petitioner cannot prevail against the Commissioner's action on the ground which he raises under Ground 2. The renegotiation of the contract between the partnership of which petitioner was a member and the Contracts Board and the resultant tax credits of the individual partners resulted in an adjustment of the partnership income for the year 1945. The partnership is not a taxable entity. A partnership files only an information return and the Federal income tax is imposed on the individual incomes of the partners. Sections 181, 182, 187 of the Internal Revenue Code.

Since the partners must report their distributive shares of partnership income for purposes of the income tax, any adjustment which affects an individual partner's distributive share affects also his income tax liability and must be considered by the Commissioner in his determination of the true tax liability of the partner, and by the Tax Court in any determination thereof. Therefore, the tax credit for a partnership under section 3806 for the taxable year under renegotiation is the aggregate amount of the separate tax credits to which the individual partners are entitled. Each partner's share of the partnership's income is reduced by the elimination of the excessive partnership profit. *United States* v. *Sankozy*, 99 F. Supp. 736, 742. We think petitioner's Ground 2 cannot be sustained.

The first paragraph of the stipulation of facts reads:

1. The Commissioner concedes assignment of error 4.1 of the petition to the extent of $10,165.80, thereby eliminating all taxable income as to the petitioner for the year 1945.

It therefore follows that $2,047.59 of the deficiency computed in the deficiency notice must fail. Respondent does not contend otherwise. Of the deficiency determined by respondent, $5,007.60 is sustained.

Reviewed by the Court.

> *Decision will be entered that there is a deficiency of $5,007.60.*

---

ARUNDELL, *J.*, dissenting: The first question presented by this proceeding is whether it is within our jurisdiction so that we may hear and decide it on its merits. If it is, there is a further question as to the amount of the deficiency.

1550

I accept the conclusion of the majority on the jurisdictional question. The respondent has determined that there is a deficiency in the petitioner's income tax for the year 1945, has sent a notice of such deficiency to the petitioner, and the petitioner has filed with this Court a timely petition for a redetermination. There has thus been compliance with the basic jurisdictional factors prescribed by Code section 272 (a). While it may be that upon consideration of the merits of a case, we may decide that there is no deficiency, we must take the amount that has been determined by the respondent to be a deficiency as the starting point in deciding whether a proceeding is within our jurisdiction. The fact that the respondent later concedes error as to some or all of the amount determined by him does not oust us of jurisdiction of a proceeding obtained by compliance with the provisions of section 272 (a).

The majority concludes that there is a deficiency in tax in the amount of $5,007.60. This amount so redetermined is the amount by which the petitioner's tax for 1945 has been reduced by renegotiation proceedings, and which was credited to his renegotiation liability after all of his 1945 income tax had been refunded. It is one of the two sums set forth in the respondent's notice as making up the deficiency. On this point I disagree with the majority, as I think that there is no deficiency.

Although for jurisdictional purposes we accept an amount which has been determined by the respondent to be a deficiency as such, from that point on our function is to "redetermine the correct amount of the deficiency." Code section 272 (e). Our redetermination may be that the deficiency determined by the respondent is correct, or that the correct amount is greater or less than that determined by him. If our redetermination differs from the respondent's determination, there are statutory procedures by which the result of our decision may be made effective.

A deficiency has its source in the tax imposed by law. Section 271 of the Code starts out with the statement that " 'deficiency' means the amount by which the tax imposed by this chapter exceeds the excess of" the sum of the amount returned by the taxpayer plus amounts previously assessed as a deficiency *over* the amount of rebates. It follows that in no case can the deficiency be greater than the tax imposed by law. In this case, the petitioner reported and paid an amount equal to the tax imposed by law based on the then existing facts. When, by reason of a subsequent net operating loss, the petitioner's taxable income was eliminated, there was no tax imposed by law on him for the year 1945. Consequently, there was no deficiency. The fact that liability to make a renegotiation refund has been abated does not increase the amount of the tax imposed by law and, therefore, it does not create a deficiency.

I recognize that by the credit of $5,007.60 against the petitioner's renegotiation liability he has in effect received funds from the Treasury to which he was not entitled. No doubt there is a procedure, including a proper form, by which the excess payment can be recovered. I think that a deficiency proceeding is not the proper one when in fact and in law there is no deficiency in tax.

I would enter a decision that there is no deficiency.