WILKES-BARRE CARRIAGE CO., INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64639.   Filed March 7, 1963.

*Fred R. Tansill, Esq.*, for the petitioner.
*John J. Madden, Esq.*, and *John E. McDermott, Esq.*, for the respondent.

### OPINION.

RAUM, *Judge:* The statutory notice of deficiency, issued in July 1956, relates to petitioner's tax liability for the fiscal years ended July 31, 1943, through July 31, 1947, but fiscal 1943 is the only year presently in dispute.[1] The facts have been fully stipulated.

Petitioner, an accrual basis taxpayer with a fiscal year ending July 31, is a Delaware corporation, and was engaged during the taxable years in the manufacture of ordnance for the armed services of the United States and Great Britain. Its offices were in New York City,

---

[1] This old case was heard and briefs submitted only within the past 6 months. Waivers of the statute of limitations have kept it alive so as to render timely the statutory notice and commencement of the litigation in 1956; delays thereafter have been due to various continuances requested by the parties.

and it filed its Federal income and excess profits tax returns here involved with the then collector of internal revenue for the third district of New York.

Petitioner concedes all of the deficiencies set forth in the statutory notice with respect to all of the years, except the excess profits tax and the declared value excess profits tax deficiencies for 1943, determined by the Commissioner in the statutory notice to be in the amounts of $311,675.46 and $6,053.14, respectively. As to 1943, petitioner admits the correctness of the various adjustments made by the Commissioner increasing its taxable income for that year, but contends that by reason of section 3806, I.R.C. 1939, relating to renegotiation, there are not only no deficiencies for 1943 but that there is in fact an overpayment in excess profits taxes for that year in the amount of $181,846.10.[2] On the other hand, the Commissioner, by his answer as amended, has revised the amount of the deficiencies for 1943, claiming that the correct deficiencies in excess profits tax and declared value excess profits tax are $3,179,447.07 and $210,659.62, respectively.

Petitioner's 1943 returns, filed December 15, 1943, reported net income in the amount of $5,002,657.38, and showed the following taxes due:

| | |
|---|---:|
| Income | $12, 600. 29 |
| Declared value excess profits | 165, 350. 77 |
| Excess profits | 3, 815, 848. 10 |
| Total liability | 3, 993, 799. 16 |

The taxes in these amounts were assessed on January 13, 1944, but petitioner has in fact paid only a total amount of $1,556,301.30 in respect of such taxes. The payments aggregating this amount were made over a period of several years beginning in 1943, and were used to discharge in full petitioner's reported income tax and declared value excess profits tax liability and to discharge in part its reported excess profits tax liability, as follows:

| | Liability | Amount paid | Balance |
|---|---:|---:|---:|
| Income tax | $12, 600. 29 | $12, 600. 29 | |
| Declared value excess profits tax | 165, 350. 77 | 165, 350. 77 | |
| Excess profits tax | 3, 815, 848. 10 | 1, 378, 350. 24 | $2, 437, 497. 86 |
| | 3, 993, 799. 16 | 1, 556, 301. 30 | 2, 437, 497. 86 |

Accordingly, in view of that large unpaid balance and in view of the further fact that the Commissioner has made a number of presently uncontested adjustments increasing petitioner's reported tax-

---

[2] Petitioner originally claimed an overpayment in the amount of $239,124.90, but in its reply brief, it has reduced its claim to $181,846.10. For the computation of this amount, see p. 843, *infra*.

able income, it is plain that but for the renegotiation discussed below petitioner's outstanding tax liability would be even greater than the foregoing amount of the unpaid balance. Did the renegotiation proceedings and their ultimate resolution have the effect of erasing petitioner's tax liability and indeed producing an overpayment in excess profits tax, as contended by petitioner? As will be developed hereinafter, we think that in no circumstances is petitioner entitled to any refund, and that it owes a large amount in taxes, more than determined in the statutory notice of deficiency but not as much as claimed by the respondent in his answer as amended.

During the period between July 31, 1943, and April 3, 1947, petitioner participated in renegotiation proceedings [3] with the War Department of the United States, directed toward the determination of the amount of payments made by the United States to petitioner under certain war contracts, which were to be refunded to the United States as "excessive profits" under the Renegotiation Act. By order of April 3, 1947, the War Contracts Price Adjustment Board, acting under the Renegotiation Act, determined that petitioner's profits under contracts subject to renegotiation for the fiscal year ending July 31, 1943, were excessive in the amount of $3,789,321. And it is the repayment of those excessive profits to the United States or the manner in which petitioner's liability to restore those excessive profits to the United States was discharged that gives rise to the tax problem that is before us.

The method for recapturing such excessive profits was spelled out in certain provisions that were added in 1942 to the Internal Revenue Code of 1939 and are contained in section 3806 thereof.[4] Pertinent portions of section 3806 are set forth in the margin.[5] Section 3806

---

[3] Section 403 of the Sixth Supplemental National Defense Appropriation Act of 1942 (56 Stat. 245 "Renegotiation Act"), as amended.

[4] Section 3806 was added to the Code by section 508 of the Revenue Act of 1942, ch. 619, 56 Stat. 798.

[5] SEC. 3806. MITIGATION OF EFFECT OF RENEGOTIATION OF WAR CONTRACTS OR DISALLOWANCE OF REIMBURSEMENT.

(a) REDUCTION FOR PRIOR TAXABLE YEAR.—

(1) EXCESSIVE PROFITS ELIMINATED FOR PRIOR TAXABLE YEAR.—In the case of a contract with the United States or any agency thereof, or any subcontract thereunder, which is made by the taxpayer, if a renegotiation is made in respect of such contract or subcontract and an amount of excessive profits received or accrued under such contract or subcontract for a taxable year (hereinafter referred to as "prior taxable year") is eliminated and, in a taxable year ending after December 31, 1941, the taxpayer is required to pay or repay to the United States or any agency thereof the amount of excessive profits eliminated or the amount of excessive profits eliminated is applied as an offset against other amounts due the taxpayer, the part of the contract or subcontract price which was received or was accrued for the prior taxable year shall be reduced by the amount of excessive profits eliminated. * * *

\*     \*     \*     \*     \*     \*     \*

(b) CREDIT AGAINST REPAYMENT ON ACCOUNT OF RENEGOTIATION OR ALLOWANCE.—

(1) GENERAL RULE.—There shall be credited against the amount of excessive profits eliminated the amount by which the tax for the prior taxable year under Chapter 1, Chapter 2A, Chapter 2B, Chapter 2D, and Chapter 2E, is decreased by reason of the

merely incorporated into the statute the method which had previously been employed administratively without specific statutory authorization. I.T. 3577, 1942-2 C.B. 163; I.T. 3611, 1943 C.B. 978; S. Rept. No. 1631, 77th Cong., 2d Sess., p. 254. The theory underlying that method was that since large amounts of taxes had already been paid or assessed with respect to such excessive profits, it should be necessary for the contractor to restore to the Government only the difference between the excessive profits and the taxes applicable thereto. The fact that such taxes had been paid or would be paid as assessed was considered as an offset against the total excessive profits. Section 3806(a) provided the means for determining the extent to which the contractor's taxes were reduced by eliminating the excessive profits, and section 3806(b) in substance provided the means whereby the contractor could discharge his liability to restore the excessive profits in part by applying against that liability a refund or credit with respect to the taxes which had already been imposed upon such excessive profits.

Thus, in terms of the $3,789,321 excessive profits in this case, a credit for taxes in the total amount of $3,064,526.96 was allowed under section 3806(b), leaving a balance of only $724,794.04 to be repaid to the United States as excessive profits. And petitioner's liability in respect of the payment of that $724,794.04 balance has since been satisfied.[6] Its liability to repay the $3,789,321 excessive profits has therefore been fully discharged.

What gives rise to the present controversy is the fact that petitioner has actually received the benefit of a credit or refund of $3,064,526.96 in taxes that was applied against its liability to restore its $3,789,321 excessive profits to the Government, notwithstanding that it had not in fact paid anything like that amount in taxes. To be sure, it had filed returns for 1943 disclosing tax liabilities in an aggregate amount that was sufficient to support a $3,064,526.96 refund or credit to be applied against its liability to restore the excessive profits. But the

---

application of paragraph (1) of subsection (a) ; * * *

\*         \*         \*         \*         \*         \*         \*

(c) CREDIT IN LIEU OF OTHER CREDIT OR REFUND.—If a credit is allowed under subsection (b) with respect to a prior taxable year no other credit or refund under the internal revenue laws founded on the application of subsection (a) shall be made on account of the amount allowed with respect to such taxable year. If the amount allowable as a credit under subsection (b) exceeds the amount allowed under such subsection, the excess shall, for the purposes of the internal revenue laws relating to credit or refund of tax, be treated as an overpayment for the prior taxable year which was made at the time the payment, repayment, or offset was made.

[6] In 1948 the United States brought suit in a Federal District Court to recover that balance and obtained judgment against petitioner for the full amount of the $724,794.04 claimed. The judgment was not then paid. Subsequently, in a suit in the Court of Claims brought by an affiliate of petitioner, the United States counterclaimed to recover the foregoing balance embodies in the District Court judgment. The Court of Claims litigation was settled in 1954, and, as part of the settlement, petitioner's liability to repay the balance of the excessive profits, $724,794.04, was satisfied.

fact is that it had not paid the taxes to support any such refund or credit, and indeed there was an unpaid balance of $2,437,497.86 in its assessed 1943 excess profits taxes.

It is in the light of these circumstances that we must consider petitioner's extraordinary contention that there was an overpayment in its 1943 excess profits taxes. The argument is deceptively simple, and may be stated as follows: Section 3806(a) requires the elimination of the $3,789,321 excessive profits from its 1943 taxable income; the excess profits tax as recomputed (by the Commissioner) after such elimination is $1,196,504.14; [7] petitioner in fact has paid $1,378,350.24 on its 1943 excess profits tax liability; it has therefore overpaid its excess profits tax by $181,846.10, namely, the difference between the foregoing amounts.

We reject that argument as fallacious. We hold that there was in fact no overpayment; that the overpayment claimed by petitioner is an illusion brought about by a misunderstanding of the purpose and operative scope of section 3806; and that petitioner in fact is liable for a substantial amount of taxes.

The underlying premise of petitioner's argument is that the section 3806(a) elimination of excessive profits can be used to do double duty: First, to reduce the contractor's taxes and provide a refund or credit in the amount of such reduction under section 3806(b) to be applied against his obligation to repay the excessive profits; and second, to shrink the contractor's liability for taxes by the same amount without taking into account the fact that he has already been given the benefit of the reduction in tax contemplated by section 3806(a). But that provision could never have been intended to furnish the means for reducing a contractor's tax liability a second time. For, the section 3806(b) credit is given to the contractor only on the assumption that he has paid (or will pay) the full amount of the taxes otherwise owed by him. "The rationale behind the tax credit is that income *taxes have been paid* on income, which, in later years, must be refunded as excessive profits pursuant to the renegotiation law." (Italics added.) *Morris Kurtzon*, 17 T.C. 1542, 1547. And in the unusual circumstances of this case, where petitioner has failed to pay the full amount of such taxes originally, the tax liability must be correctly computed first so as to provide a base from which the reduction contemplated by section 3806(a) may be made.

Petitioner's fallacy lies in the use of section 3806(a) to determine its basic tax liabilities without giving any consideration to the fact

---

[7] That recomputation, apparently agreed to by petitioner, eliminated the excessive profits pursuant to section 3806(a), but reflected the Commissioner's various additions to taxable income which petitioner does not contest. Based on the returns as filed, without giving effect to the additions, the excess profits tax would be $916,671.91 if computed after eliminating the excessive profits.

that it has already had the benefit (through the section 3806(b) credit) of the provisions of section 3806(a) without previously having paid the full amount of taxes that were reduced by section 3806(a). To the extent that the section 3806(b) credit was not supported by taxes actually paid in respect of the excessive profits eliminated, such credit was in the nature of an erroneous refund [8] (cf. *Rushlight Automatic Sprinkler Co.* v. *United States*, 294 F. 2d 572 (C.A. 9)), and can be assessed or reassessed as a deficiency. Cf. *Morris Kurtzon*, 17 T.C. 1542; *Joseph T. Miller*, 23 T.C. 565, affirmed 231 F. 2d 8 (C.A. 5). Moreover, "It does not make any difference, for present purposes, whether it [an amount included in the sec. 3806(b) credit] was incorrectly credited or repaid. * * * The fact of the matter is that the petitioner has received the full benefit of the crediting or repayment through a reduction * * * in the amount which it otherwise would have had to pay in the renegotiation proceeding." *Baltimore Foundry & Machine Corporation*, 7 T.C. 998, 1001–1002.

In the typical case the contractor will already have paid the taxes shown on his return, and section 3806(c) illuminates the scheme of the statute by providing that if a credit is allowed under subsection (b), no other credit or refund shall be made on the basis of subsection (a). Accordingly, *if petitioner had paid its excess profits tax in full in the first instance, there would be no overpayment* owing to it as a result of the application of section 3806(a). By what kind of logical legerdemain does petitioner become entitled to a decision that it has overpaid its tax here where it has actually underpaid it by a large amount?

In our judgment the respondent is entitled to determine a deficiency that will reflect (a) that portion of the section 3806(b) credit used by petitioner that was not supported by taxes paid with respect to the excessive profits eliminated, plus (b) such additional amount as will take into account the uncontested additions to taxable income. In this case the record does show that the section 3806(b) credit was supported to some extent,[9] and a recomputation will be required to give effect to this consideration.

---

[8] Petitioner argues that if the section 3806(b) credit in this case is treated as an erroneous refund it was made in 1947; that a suit to recover an erroneous refund at that time had to be filed within 2 years (sec. 3746(b), I.R.C. 1939); and that since the statutory notice herein was not issued until 1956, the claim is barred. But petitioner misconceives the nature of this suit. Its position would be correct if this were a suit brought by the United States to recover an erroneous refund. However, this suit involves the determination of a *deficiency* which has been kept open by waivers that went beyond the institution of this litigation, and it is clear that "refunds must be considered in determining the amount of any deficiency." *Universal Oil Products Co.* v. *Campbell*, 181 F. 2d 451, 478 (C.A. 7).

[9] The stipulated facts show that the section 3806(b) credit in the amount of $3,064,526.96 consists of two components, $165,350.77 declared value excess profits tax and $2,899,176.19 excess profits tax; that petitioner had paid $1,378,350.24 excess profits tax; and that petitioner's excess profits tax on its income as reported but after eliminating

The conclusion that we reach is in accord with Rev. Rul. 55-474, 1955-2 C.B. 673, which reads in its entirety as follows:

In determining the amount of a tax credit under section 3806(b) of the Internal Revenue Code of 1939, since assessed taxes are in most cases paid prior to the allowance by the renegotiating agency of the tax credit, although the tax payment may be made subsequent to the computation of such credit by the Internal Revenue Service, it is the policy to use the *assessed* tax in the computation of the credit, in order to avoid the delay in the settlement of the net repayment due the renegotiating agency, which would result if such computation were not made until the assessed taxes were paid in full. Where, however, the Service has knowledge of an outstanding assessment the payment of which is in doubt, the computation of the credit by the Internal Revenue Service is made on the basis of taxes *paid* and the amount of the credit, furnished to the renegotiating agency which allows the tax credit, is limited to the extent of the *overpayment* of tax. In any event, if outstanding taxes are not later paid and the tax credit based on *assessment* (rather than *payment*) has already been finally allowed by the renegotiating agency, the tax credit allowed, to the extent it exceeds the allowable credit based upon taxes *paid*, will be reassessed as a deficiency. See *Baltimore Foundry and Machine Corporation* v. *Commissioner*, 7 T.C. 998.

We hold that this ruling is valid and must be given effect here.

There has been much confusion as to the precise issues presented in this litigation, and petitioner has devoted much effort to the question whether section 3806 requires the repayment of the excessive profits as a prerequisite to the allowance of a deduction for such amounts. We think that this is a false issue in the context of this case. The record shows that petitioner's renegotiation liability has been fully discharged; the true issue is petitioner's correct tax liability as affected by the renegotiation. Moreover, the difficulties in dealing with this case have been enhanced by the fact that the respondent has from time to time changed the theory of his case. However, the rule is well established that a deficiency may be approved on the basis of reasons other than those relied upon by the Commissioner or even where his reasons may be incorrect. *Blansett* v. *United States*, 283 F. 2d 474, 478-479 (C.A. 8); *Bernstein* v. *Commissioner*, 267 F. 2d 879, 881-882 (C.A. 5); *Acer Realty Co.* v. *Commissioner*, 132 F. 2d 512, 514-515 (C.A. 8); *Alexander Sprunt & Son* v. *Commissioner*, 64 F. 2d 424, 427 (C.A. 4); *Crowell* v. *Commissioner*, 62 F. 2d 51, 53 (C.A. 6); *J. & O. Altschul Tobacco Co.* v. *Commissioner*, 42 F. 2d 609, 610 (C.A. 5); *Hughes* v. *Commissioner*, 38 F. 2d 755, 757 (C.A. 10); *John L. Chipley*,

---

the excessive profits would be $916,671.91. Accordingly, the difference of $461,678.33 represents actual payment by petitioner of excess profits tax in respect of the excessive profits. Thus, the section 3806(b) credit of $2,899,176.19 in excess profits tax was supported to the extent of $461,678.33, and petitioner is entitled to have this fact taken into account in the determination of the deficiency. The respondent's determination in his answer as amended did not take this consideration into account, but he now concedes on brief that a recomputation in this respect is proper.

Of course, to the extent that the section 3806(b) credit was based upon the declared value excess profits tax it was fully backed up by the payment of the $165,350.77 in taxes.

25 B.T.A. 1103, 1106; *Edgar M. Carnick*, 21 B.T.A. 12, 21; cf. *Helvering* v. *Rankin*, 295 U.S. 123, 132–133. We are satisfied here, on the stipulated facts, that the Commissioner's ultimate position is sound, but that the deficiency determined must be revised in accordance with this opinion.

*Decision will be entered under Rule 50.*