**ALLSTATE INSURANCE COMPANY,**
Plaintiff-Appellant,

v.

**UNITED STATES of America,**
Defendant-Appellee.

No. 14264.

United States Court of Appeals
Seventh Circuit.

March 19, 1964.

Charles W. Davis, Chicago, Ill., William A. McClintock, Jr., Skokie, Ill., Edward W. Rothe, Samuel H. Horne, Washington, D. C., Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., of counsel, for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, John B. Jones, Jr., Attorney, U. S. Department of Justice, Wash-

ington, D. C., Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Lee A. Jackson, Harold C. Wilkenfeld, Attorneys, Department of Justice, Washington, D. C., James P. O'Brien, U. S. Atty., of counsel, for appellee.

Before DUFFY, KNOCH and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff-Appellant, Allstate Insurance Company, hereinafter called "Allstate," brought this action in the United States District Court to secure refund of federal income taxes (plus interest) in a total amount in excess of $3,400,000, allegedly assessed and collected wrongfully for the years 1950, 1952 and 1953. The facts are undisputed (with one not very pertinent exception noted below), and the parties filed cross motions for summary judgment. The District Court granted defendant's motion and denied the motion of Allstate which took this appeal.

Allstate is a casualty insurance company. It is a wholly owned subsidiary of Sears, Roebuck & Company, hereinafter called "Sears," which is engaged in retail selling of merchandise.

Since 1932, as might be expected, because of the inventory problems of a retail merchandising company, Sears has used a fiscal year ending January 31 for income tax reporting purposes. Allstate has always used a calendar year period, as required by the pertinent regulations for insurance companies.

The Internal Revenue Code of 1939, § 435(e), effective for taxable years ending after June 30, 1950, allowed a taxpayer to compute its average base period net income, for excess profits credit purposes, on a formula which allowed for unusual growth during the 1946–49 excess profits base period, under certain conditions.

The taxpayer had to have a total payroll for 1948 and 1949 of at least 130% of its total payroll for 1946 and 1947, or its gross receipts for 1948 and 1949 had to be at least 150% of its gross receipts for 1946 and 1947. Allstate met both of these conditions.

The question before us is: did Allstate meet the further requirement that Allstate's total assets as of January 1, 1946, plus the assets, as of that same date, of all corporations with which Allstate had the privilege, under § 141, of filing a consolidated return for its first taxable year ending after June 30, 1950, did not exceed $20 million.

Allstate alone did meet the test. If Allstate's and Sears' assets as of January 1, 1946, must be combined, then Allstate does not qualify for the alternative formula.

Allstate used the alternative growth formula for 1950 through 1953. The Commissioner of Internal Revenue considered that Allstate was not entitled to use the growth formula; that Allstate should have used the general average earnings formula, which resulted in greatly reduced excess profits credits. Allstate paid the deficiencies asserted by the Commissioner for 1950, 1952 and 1953, with interest. Allstate's claims for refund were disallowed. The Commissioner's position is that Allstate and Sears could have filed a consolidated return for the fiscal year ending January 31, 1951.

The defendant placed in evidence a number of private letter rulings of the Internal Revenue Service over a 12-year period to show that there was an unpublished administrative practice under which Sears and Allstate would have secured a ruling (had they applied for one) allowing them to file a consolidated return for the fiscal year ending January 31, 1951. Allstate disputed the existence of such an unpublished administrative practice.

Allstate's position is that it did not have the privilege of filing a consolidated return with Sears for its first taxable year ending after June 30, 1950, because § 24.14 of the Treasury Department's Consolidated Return Regulations 129 required the taxable year of an affiliated group making a consolidated return to be the same as the taxable year of the common parent corporation. If they

were not the same, the subsidiary is required to change its accounting period to conform. However, Allstate is an insurance company, which is required expressly by regulation to use the calendar year for income tax reporting purposes, and Sears, its parent corporation, has a January 31 fiscal year tax accounting period. Allstate contends that there was no way under the Internal Revenue Code or the Treasury Department's regulations to bring these two diverse accounting periods into conformity for the purpose of filing a consolidated return for the first taxable year ending after June 30, 1950, regardless of whether that first taxable year is considered to be Allstate's calendar year ending December 31, 1950, or Sears' fiscal year ending January 31, 1951.

The District Judge did not rely on the alleged unpublished administrative practice, the existence of which Allstate disputed. He agreed that since Allstate and Sears had different accounting periods, and Allstate was required, as an insurance company to use a calendar year for tax reporting purposes, and could not change to a fiscal year in the manner prescribed in § 24.14, Allstate did not have the privilege of filing a consolidated return with Sears for its first taxable year ending after June 30, 1950, and that the unpublished administrative practice asserted by the defendant was not material in determining whether the privilege existed.

However, he felt that § 141(a) [1] of the Code of 1939 unqualifiedly granted affiliated corporations the privilege of filing consolidated returns, and that therefore § 24.14 was in conflict with it and invalid. He concluded that if Allstate and Sears had attempted to file a consolidated return, the courts, presumably, would have sustained their right to do so, and, therefore, they did have the privilege of filing a consolidated return for Allstate's first taxable year ending after June 30, 1950.

The District Court also held that the invalidity of § 24.14 (insofar as it applied to insurance subsidiaries of parents which did not file on a calendar year basis) was cured by subsequent regulations under the 1954 Code, added by T.D. 6412, 1959–2 Cum.Bull. 199. Under that regulation, the first consolidated return of an affiliated group, including a fiscal year parent and a calendar year insurance company subsidiary, may be filed for the fiscal year of the parent (a provision diametrically opposed to the requirement that insurance companies must make their returns on a calendar year period) provided the entire group thereafter changes to a calendar year accounting period.

Allstate's first taxable year ending after June 30, 1950, was the calendar year ending December 31, 1950. Sears'

---

1. § 141, (as amended by § 301, Excess Profits Tax Act of 1950, c. 1199, 64 Stat. 1137) Consolidated Returns.

"(a) Privilege to File Consolidated Returns.—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return *shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under subsection (b)* prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

"(b) Regulations.—The Secretary shall prescribe such regulations *as he may deem necessary* in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income-and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability." [Emphasis added.]

first taxable year ending after June 30, 1950, was the fiscal year ending January 31, 1951. Unlike other subsidiaries, Allstate being an insurance company, could not make an automatic change of accounting period by filing a consolidated return with Sears and merely notifying the Commissioner of that fact. To make the accounting periods conformable, to file a consolidated return, Sears would have to obtain the Commissioner's discretionary permission to change to a calendar year tax accounting period by making application at least 60 days before the close of a calendar year, or prior to November 1, 1950, Regulations 111 § 29.46-1. However, the Excess Profits Tax Act of 1950 was not enacted until January 3, 1951.

■ As Allstate argues, there was no conflict between § 141(a) which conditioned the privilege of consolidated returns on consent to the regulations prescribed, and § 24.14(a) which did not deny the filing of consolidated returns but required the parent and subsidiary to be on the same taxable year. There was a procedure whereby the parent could take steps to secure leave of the Commissioner to change its taxable year and file consolidated returns for years subsequent to Allstate's first taxable year ending after June 30, 1950. At the pertinent time, however, there was no published procedure whereby Allstate and Sears could have filed a consolidated return for Allstate's first taxable year ending after June 30, 1950.

■ Section 141(a) and (b) represents a broad delegation of legislative power to issue regulations having the force of statute. The regulations here

involved are not merely interpretive regulations, which may have exceeded the legislative intent of the Code, as the District Court apparently concluded. A very broad delegation has been made in § 141(a) in conditioning the privilege of filing consolidated returns on consent to the Treasury Regulations promulgated pursuant to § 141(b). Thus the regulations so promulgated became legislative in character having the force and effect of law, so long as they were reasonably adapted (as these are) to the administration and enforcement of the act and did not contravene some statutory provision. Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 157-158, 64 L.Ed. 297 (1920); United States v. Barnard, 10 Cir., 1958, 255 F.2d 583, 589, cert. den. 358 U.S. 919, 79 S.Ct. 287, 3 L.Ed.2d 238.

The government asserts that this situation would have been subject to special filing as provided in § 24.14(b) [2]. As the government sees it, § 24.14(b) applied to this case reads for all practical purposes:

" * * * a change of accounting period [in this case of the parent] is necessary in order to conform the accounting periods" of Allstate and Sears, and "the requirements of section 29.46-1, Regulations 111, relating to notice of change, cannot otherwise be complied with." In such event, the "notice shall be furnished at or before the time of filing the consolidated return."

As T.D. 5835 and T.D. 5844 extended the time for filing the return until, eventually, July 31, 1951, the government feels that Sears and Allstate had more

---

2. "§ 24.14 Accounting period of an affiliated group.—

"(a) The taxable year of an affiliated group which makes a consolidated return shall be the same as the taxable year of the common parent corporation; and, upon having elected to file consolidated returns, each subsidiary corporation shall, not later than the close of the first consolidated taxable year ending thereafter, adopt an annual accounting period, fiscal year or calendar year as the case may be,

in conformity with that of the common parent.

"(b) If a change of accounting period is necessary in order to conform the accounting periods of the common parent and of its subsidiaries, and if the requirements of section 29.46-1, Regulations 111, relating to notice of change, cannot otherwise be complied with, such notice shall be furnished at or before the time of filing the consolidated return."

than ample time to exercise the privilege of filing a consolidated return for the year ending December 31, 1950.

The government argues further that limiting § 24.14(b) to cases where the subsidiary is to adopt the annual accounting period of the parent, pursuant to § 24.14(a)—as Allstate contends it must be limited—would render § 24.14(b) surplusage because § 29.46–1 of Treasury Regulations 111 provides:

"If a change of accounting period of a subsidiary is required for income tax purposes under section 23.14 of Regulations 104 or for excess profits tax purposes under section 33.14 of Regulations 110, the information required on Form 1128 shall be furnished by the subsidiary at or before the time of filing the consolidated income tax return or the consolidated excess profits tax return, as the case may be. * * *"

On the other hand, Allstate, in turn, notes that as late as 1955, in Revenue Ruling 55–80, 1955–1 Cum.Bull. 387, we find confirmation of the fact that a parent wishing to change its accounting period to conform with its subsidiaries', to file consolidated returns, was required to obtain the Commissioner's permission prior to such filing.

We find ourselves in agreement with Allstate's contention that the effect of § 24.14(b) is to permit a subsidiary, which is required by § 24.14(a) to adopt the parent's accounting period, to do so automatically.

In the light of the clear language of § 435(e) (1) (A) (i) of the Code, we find no merit in the government's argument that the privilege of filing a consolidated return is synonymous with membership in an "affiliated group."

We have carefully considered all the arguments raised by both parties and have scrutinized all pertinent cases, authorities, and items of legislative history, to which both parties refer. We conclude that Allstate and Sears did not have the privilege of filing a consolidated return for that first taxable year ending after June 30, 1950.

Accordingly we direct that the District Court's judgment be reversed, and this cause be remanded for entry of summary judgment for Allstate, there being no dispute over a material fact.

Reversed and remanded with directions.

SWYGERT, Circuit Judge (dissenting).

Allstate Insurance Company's eligibility to use the "growth" method, prescribed by section 435(e) (1) (A) (i) of the Internal Revenue Code of 1939, in computing its Korean War excess profits tax credit depends upon whether it was required to add to the $15,381,893.70, its total assets as of the first day of its base period (January 1, 1946), the total assets of its parent corporation, Sears, Roebuck and Company. This requirement depends in turn on whether Allstate had the privilege under section 141 of the Internal Revenue Code of 1939 of filing a consolidated return with its parent corporation for the first taxable year under the Excess Profits Tax Act of 1950.

Section 141 of the 1939 Code provides that: "An affiliated group of corporations shall * * * have the privilege of making a consolidated return for the taxable year in lieu of separate returns." Under the facts, Allstate and Sears were an "affiliated group" within the meaning of this section.

Notwithstanding the clear words of section 141, Allstate argues that section 24.14 of the Treasury Department's Regulations 129 (the consolidated returns regulations) when construed with section 29.204–1 of Regulations 111 (the income tax regulations) deprived it of the privilege of filing a consolidated return with Sears for the first taxable year ending after June 30, 1950.[1] It points out

1. Allstate's first taxable year ending after June 30, 1950 was the calendar year ending December 31, 1950; Sears' first taxable year was the fiscal year ending January 31, 1951.

that section 24.14 of the regulations requires that the taxable year of a subsidiary which makes a consolidated return should be the same as the taxable year of the parent corporation and, if they are not the same, the regulation requires the subsidiary to change its accounting period to conform; but since Allstate is an insurance company and thus required by section 29.204–1 of the regulations to use a calendar year for income tax reporting purposes, it could not conform to Sears' fiscal year accounting period. Allstate adds that Sears could not have changed to a calendar year accounting period without first having obtained the Commissioner's *discretionary* approval pursuant to a timely request as required by section 46 of the 1939 Code and section 29.46–1 of Regulations 111.

The right of an insurance company (such as Allstate) taxable under section 204 of the 1939 Code to file a consolidated return with a non-insurance parent company was established by the Excess Profits Tax Amendments of 1941[2] and the Revenue Act of 1942.[3]

The specific question is whether at any time from 1942 until the enactment of the Excess Profits Tax Act of 1950 on January 3, 1951, Allstate and Sears could have coordinated their taxable years so as to comply with the applicable Treasury regulations. It is true, as taxpayer argues, that section 29.204–1 of Regulations 111 (which requires insurance companies such as Allstate to file their returns on a calendar year basis) when construed with section 24.14(a) of Regulations 129 (which specifies that the taxable year of an affiliated group shall be the same as that of the parent) would have prevented the filing of a consolidated return on Sears' fiscal year accounting basis. However, there was nothing in the statutes or regulations that would have prevented Sears from changing its taxable year from a fiscal to a calendar year basis.

Indeed, taxpayer acknowledges this possibility but says a change by Sears to a calendar year accounting basis could not have been accomplished unless Sears had first applied and obtained the Commissioner's discretionary permission under the provisions of section 29.46–1 of Regulations 111. The Government answers that in similar situations the Commissioner has permitted fiscal year parent corporations to change to their subsidiaries' calendar year bases. There is nothing to indicate that the Commissioner would not have given consent to Sears had it requested to change its accounting period.

The ultimate question is not whether Sears and Allstate were obligated to coordinate their tax accounting years or whether it was economically advantageous for them to do so. Rather, the question is simply whether they qualified under the statutes and regulations for the filing of a consolidated return.

The legislative history of section 435 (e) (1) (A) (i) indicates that Congress did not intend that the growth method of computing excess profits tax credits should be available to taxpayers such as Allstate. For example, the Senate Finance Committee explained certain changes in the wording of the section (S. Rep. No. 2679, 81st Cong., 2d Sess. 27, U.S.Code Congressional Service 1950, p. 4114 (1951–1 Cum.Bull. 240, 258)):

"Under the Finance Committee bill, as under the House bill, the alternative based on growth is available only if the taxpayer had total assets of not more than $20,000,000 at the beginning of its base period. This restriction is designed to exclude from the benefits of the growth provision large corporations whose earnings experience does not justify additional relief on account of growth. * * *

"The committee bill has added to the limitation based on size the proviso

2. Excess Profits Tax Amendments of 1941, ch. 10, § 7, 55 Stat. 17.

3. Revenue Act of 1942, ch. 619, § 159, 56 Stat. 798.

that, when the taxpayer is one of a group of corporations meeting the test of affiliation provided in section 141 of the Internal Revenue Code, the assets of the taxpayer shall be added to those of the other 'affiliated' corporations for the purpose of the limitation in question. Corporations which are 'affiliated' in this manner are eligible to file consolidated returns, and the aggregation of their assets for the purpose of this test is necessary in order to prevent discrimination against affiliated corporations which elect to file consolidated returns."

In my opinion Allstate should not be granted an unintended tax benefit by its hypertechnical construction of the regulations.

I would sustain the district court's summary judgment in favor of the Government.