SOUTHERN PACIFIC COMPANY (FORMERLY S. P. INC.), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8648–72.     Filed March 12, 1985.

396

*Arnold I. Weber, Alan S. Beinhorn,* and *William E. Saul,* for the petitioner.

*Peter D. Bakutes, James Booher, Vernon R. Balmes, Bernard Plamer, Lawrence J. Becker,* and *Randall G. Dick,* for the respondent.

## OPINION

### *Background*

JACOBS, *Judge:*[*] This case is before the Court on petitioner's motion to dismiss for lack of jurisdiction. "Petitioners," as the word is used in this opinion, refers to Southern Pacific Co. (formerly S.P. Inc.) and a group of affiliated corporations.[1]

---

[*]By order of the Chief Judge, this case was reassigned from Judge William M. Drennen to Judge Julian I. Jacobs for disposition.

[1]The affiliated companies that joined in the petition are as follows:

Southern Pacific Co. (dissolved 11/26/69)
Holton Inter-Urban Railway Co.
Los Angeles Union Terminal, Inc.
Northwestern Pacific Railroad Co.
Pacific Petroleum Pipe Lines, Inc.
Petaluma & Santa Rosa Railroad Co.
San Diego & Arizona Eastern Railway Co.
Southern Pacific Equipment Co.
Southern Pacific Land Co.

Prior to its dissolution on November 26, 1969, Southern Pacific Co. (hereinafter former Southern Pacific) was a Delaware corporation that had been organized on March 21, 1947, and was the common parent company of an affiliated group of corporations. Southern Pacific Transportation Co. (hereinafter Transportation) was incorporated under Delaware law on February 20, 1969. Sometime before November 26, 1969, S.P. Inc., a newly formed Delaware corporation, acquired the

Southern Pacific Warehouse Co. (formerly Union Terminal Warehouse)
Monarch Brewing Co.
Nevazona Corp.
Visalia Electric Railroad Co.
Black Mesa Pipeline, Inc.
Southern Pacific Pipe Lines, Inc.
Dallas Smith Service Corp. (liquidated 4/7/69)
Dallas Terminal Railway & Union Depot Co.
Main Street Warehouse Co.
The Southwestern Town Lot Corp.
St. Louis Southwestern Railway Co.
St. Louis Southwestern Railway Co. of Texas
Bankers Leasing Corp.
BLC Corp.
Chattel Leases, Inc.
Commonwealth Control, Inc.
The Commonwealth Plan, Inc.
The Commonwealth System, Inc.
Financial Leasing Corp.
Lease Capital, Inc.
Lease Funds, Inc.
The Midwest Commonwealth Plan, Inc.
The Pacific Plan, Inc.
The Worcester Plan, Inc.
Evergreen Leasing Corp.
Evergreen Freight Car Corp.
Bravo Oil Co.
Texas Town Lot Co.
Louis Heller, Inc.
Pacific Motor Transport Co.
Pacific Motor Trucking Co.
Southern Pacific Transport Co. of Texas and Louisiana (formerly Southern Pacific Transport Co.)
Southwestern Transportation Co.
Southern Pacific Air Freight, Inc.
Southern Pacific Marine Transport Co.
Inter-California Railway Co. (liquidated 7/25/66)

In addition to the above companies, the consolidated returns, filed for taxable years in issue included Nacozari Rail Road Co. (which was liquidated on May 5, 1966), Tijuana & Tecate Railway Co. (the entire stock of which was sold in 1970), and Engineering Enterprises, Inc. (the entire stock of which was sold in 1967).

Southern Pacific Transportation Co. has joined in the petition as the successor in interest to former Southern Pacific Co. and as the designated successor agent for the affiliated group. Southern Pacific Co. (formerly S.P. Inc.) has brought the petition as "the entity to which the statutory notice was addressed."

outstanding stock of Transportation, pursuant to the terms of a merger agreement, dated February 20, 1969, among former Southern Pacific, Transportation, and S.P. Inc. In accordance with the merger agreement, former Southern Pacific transferred all of its assets to Transportation and ceased its separate corporate existence on November 26, 1969. As provided in the merger agreement and pursuant to an amendment to its certificate of incorporation adopted by its board of directors on February 20, 1969, S.P. Inc. changed its name to Southern Pacific Co. (hereinafter new Southern Pacific). The name change took effect on November 26, 1969, the effective date of the merger. Under the merger agreement, the stock of the shareholders of former Southern Pacific was automatically converted into stock of new Southern Pacific. Thus, without any formal surrender of stock certificates, the shareholders of former Southern Pacific, after the merger, became the owners of new Southern Pacific, which had no other shareholders. New Southern Pacific owned all the stock of Transportation which, in turn, owned all the assets of former Southern Pacific.

For all of the years at issue herein (calendar year 1966 through 1968), former Southern Pacific filed consolidated returns for itself and as the common parent agent for its affiliated companies.

In September of 1969, former Southern Pacific and respondent executed Forms 872 extending the period of limitations for assessment of Federal income tax against the former Southern Pacific affiliated group for the years 1962 through 1967 to March 31, 1971. The limitations period for these years was at the time still open.

By letter dated December 2, 1969, the San Francisco District Director was advised that former Southern Pacific had ceased to exist and that Transportation had been designated as the agent of the affiliated group for all relevant taxable years through the taxable year ended December 31, 1968.

In November 1970, renewal Forms 872 were executed for the years 1962 through 1967. Each waiver identified the taxpayer as "Southern Pacific Transportation Company, surviving corporation in merger with, and in its own behalf, and as agent for those corporations, which were members of the Southern Pacific Company affiliated group during the taxable year

below described." The waivers purported to extend the limitations period to September 15, 1971.

In March 1971, another set of Forms 872 were executed, at the instance of respondent, that purported to extend the statute of limitations for the years 1962 through 1965, to June 30, 1972, and for the years 1966 and 1967, to September 15, 1972. These waivers described the taxpayer as "Southern Pacific Company (formerly S.P., Inc.)* successor in interest to Southern Pacific affiliated group for the year indicated below." The asterisk, which was inserted by petitioners, referred to a footnote, also inserted by petitioners, that stated as follows: "See taxpayer's letter of transmittal as to this language." The transmittal letter objected to the designation of new Southern Pacific as the proper entity to execute the waivers.[2]

The notice of deficiency for the years 1966 through 1968 was sent to "Southern Pacific Company (formerly S.P., Inc.), successor in interest to Southern Pacific Company, and common parent of the Southern Pacific Affiliated Group" on September 1, 1972,[3] and forms the basis for the proceeding herein.

---

[2]The transmittal letter reads as follows:

March 29, 1971

Mr. Raymond F. Harless
District Director
Internal Revenue Service
P. O. Box 36040
San Francisco, CA 94102
Dear Sir:                                        Attention: *Mr. Benjamin Lemos*
  As orally requested we send you herewith six sets of Form 872, "Consent Fixing Period of Limitation Upon Assessment of Income Tax," extending the period of limitation for the taxable years 1962–1965, inclusive, to June 30, 1972, and for the taxable years 1966–1967, inclusive, to September 15, 1972. For reasons discussed by Southern Pacific Law Department personnel with personnel in the San Francisco Office of Regional Counsel, we think inappropriate the manner in which the "taxpayer" is described in these waivers, and have executed them in their present form only because you have asked that we do so notwithstanding our reservations.
  We understand that you wish the present waivers to be executed before March 31, 1971, in order that they may become effective before the waivers executed in September 1969 in the name of "Southern Pacific Company and Members of its Affiliated Group" for the years 1962–1966 expire. Accordingly the present waivers upon execution thereof are to be regarded as superseding the waivers executed in November 1970 for the same years in the name of "Southern Pacific Transportation Company, surviving corporation in merger with, and successor in interest to Southern Pacific Company, in its own behalf, and as agent for those corporations which were members of the Southern Pacific Company Affiliated Group."
                                                        (S) H. A. Nelson
  [3]In addition to determining deficiencies in the consolidated income tax liabilities of the affiliated group, the statutory notice disallowed refund claims, filed on Sept. 13, 1971, for calendar years 1966 through 1968.

*Discussion*

Petitioners argue that the petition herein must be dismissed on the ground that respondent failed to direct the notice determining deficiencies in their consolidated income tax liabilities for the years 1966 through 1968 to the proper party. Specifically, petitioners maintain that the determination of deficiencies for the years 1966 through 1968 against new Southern Pacific, as successor in interest to former Southern Pacific and as common parent agent of the affiliated group, was erroneous because new Southern Pacific was not, under the consolidated return regulations, the agent authorized to act for the affiliated group with respect to matters concerning the premerger taxable years of the group. Consequently, petitioners claim that new Southern Pacific is not the proper party against which any deficiency attributable to the years 1966 through 1968 may be determined, and that this Court has no jurisdiction over the members of the affiliated group for the years 1966 through 1968 because respondent failed to direct the statutory notice to the proper agent for the group.

The jurisdiction of this Court can be invoked only by the timely filing of a petition by a taxpayer to whom a notice of deficiency is addressed. Sec. 6213(a).[4] As we pointed out in *Intervest Enterprises, Inc. v. Commissioner*, 59 T.C. 91, 94 (1972), there are at least three prerequisites to this Court's exercise of jurisdiction: (1) A notice; (2) the determination of a deficiency in the notice; and (3) the transmittal of the notice to the taxpayer. In the present case, the controversy is focused upon whether the third of these requirements has been met. The determination of whether this requirement has been satisfied requires consideration of the consolidated return regulations.

As an initial matter, we note that the consolidated return regulations, which have been promulgated under the express authority granted in section 1502, and therefore are legislative in character, underwent a comprehensive revision in 1965 and 1966. B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders 15–51 n. 118 (4th ed. 1979). The revised regulations, which were adopted in final form in 1966,

---

[4]All statutory references are to the Internal Revenue Code of 1954 as in effect during the years at issue.

T.D. 6894, 1966–2 C.B. 362, 419, are effective with respect to taxable years beginning after December 31, 1965. Sec. 1.1502–0(a), Income Tax Regs. Thus, for the years with which we are concerned in this proceeding, calendar years 1966 through 1968, the revised regulations govern.

A central feature of the provisions of the consolidated return regulations is the role of the common parent as the exclusive agent for the affiliated group with respect to all procedural matters. In delineating the scope of the common parent's agency, the regulations specifically provide that the common parent shall act as agent for all the affiliates for such purposes as receiving deficiency notices, filing refund claims, and executing waivers of the statute of limitations.[5] Sec. 1.1502–77, Income Tax Regs.

Section 1.1502–77(a) of the revised regulations states the following general rule:

The common parent, for all purposes other than the making of the consent required by paragraph (a)(1) of sec. 1.1502–75, shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year. [Emphasis added.]

By its terms, the regulation contemplates that the common parent's authority to act as agent for the affiliated group arises on a year-by-year basis with respect to the group's consolidated income tax liability. Thus, for any given year in which a consolidated return is filed, the entity that is the common parent for that particular year is thereafter the sole agent with respect to any procedural matters that may arise in connection with the group's tax liability for that year.

Obviously, if the existence of the common parent were to terminate after the filing of a consolidated return for a particular year, the agency relationship would terminate, and the group would, in the absence of any provision in the regulations, be left without an agent to act on its behalf in any subsequent dispute over its liability for that year. The regulations, however, address the problem by prescribing the following procedures:

---

[5]Petitioners' brief cursorily refers to *Community Water Service Co. v. Commissioner*, 32 B.T.A. 164 (1935), but the issue involved therein is not now before us.

(d) *Effect of dissolution of common parent corporation.* If the common parent corporation contemplates dissolution, or is about to be dissolved, or if for any other reason its existence is about to terminate, it shall forthwith notify the district director with whom the consolidated return is filed of such fact and designate, subject to the approval of such district director, another member to act as agent in its place to the same extent and subject to the same conditions and limitations as are applicable to the common parent. If the notice thus required is not given by the common parent, or the designation is not approved by the district director, the remaining members may, subject to the approval of such district director, designate another member to act as such agent, and notice of such designation shall be given to such district director. Until a notice in writing designating a new agent has been approved by such district director, any notice of deficiency or other communication mailed to the common parent shall be considered as having been properly mailed to the agent of the group; or, if such district director has reason to believe that the existence of the common parent has terminated, he may, if he deems it advisable, deal directly with any member in respect of its liability. [Sec. 1.1502–77(d), Income Tax Regs.]

Petitioners maintain that the December 2, 1969, letter to the District Director satisfied the requirement of notice of designation under section 1.1502–77(d), Income Tax Regs., and that respondent's failure to notify petitioners of any objection to the designation of Transportation as the successor agent at that time amounted to approval of Transportation as the designated agent. Thus, petitioners conclude that Transportation is the properly designated successor agent for the affiliated group for the years at issue and respondent's failure to deliver the notice of deficiency to Transportation deprives this Court of jurisdiction.

In response to petitioners' argument, respondent maintains that the reverse acquisition rule of section 1.1502–75(d)(3), Income Tax Regs., which applies to mergers occurring after October 1, 1965, requires a different result. Respondent contends that, because the 1969 acquisition of all of the former Southern Pacific's assets by the group consisting of new Southern Pacific and Transportation constituted a reverse acquisition under the post-1965 regulations, section 1.1502–75(d)(3)(i)(b), Income Tax Regs., provides not only that the affiliation of the former Southern Pacific group continued uninterrupted after the merger but also requires that new Southern Pacific must be treated as the common parent agent for the group for all years, both before and after the merger. Respondent also argues that, in any event, the designation of

Transportation as the successor agent was invalid under section 1.1502–77(d), Income Tax Regs., and that therefore respondent could properly ignore the designation.

We turn first to respondent's contention that the reverse acquisition rule set forth in section 1.1502–75(d)(3), Income Tax Regs., applies in determining which entity, after a reverse acquisition involving the common parent, is to be treated as the agent for the surviving affiliated group for taxable years before the acquisition.

Section 1.1502–75(d)(1), Income Tax Regs., provides the general rule that an affiliated group is deemed to remain in existence as long as the common parent remains the common parent and at least one subsidiary remains affiliated with it. The regulations recognize three exceptions to the general rule, each of which provides that the affiliated group is still deemed to remain in existence even though the common parent does not remain as the common parent. One of these exceptions is the reverse acquisition rule of section 1.1502–75(d)(3), Income Tax Regs.[6]

The reverse acquisition rule provides that an affiliated group will not terminate where the stock or assets of the common parent are acquired by another corporation in exchange for the stock of that other corporation, provided that the shareholders of the acquired common parent, after the acquisition, own more than 50 percent of the value of the acquiring corporation's stock. Sec. 1.1502–75(d)(3)(i), Income Tax Regs. If the acquiring corporation, before the acquisition, is a common parent of an affiliated group, that group is deemed to terminate even though the acquiring corporation/ common parent continues to exist for all purposes except those of the consolidated return provisions. The rule is clearly designed to eliminate the discretion that the shareholders of two merging groups might otherwise have to determine which group survives, given the shareholders' ability to select which parent survives the merger.

Section 1.1502–75(d)(3)(i), Income Tax Regs., further provides that, after the acquisition, the acquiring corporation is to be treated as the common parent of the group that is deemed

---

[6]The other two exceptions set forth in the regulations are where the common parent undergoes a reorganization described in sec. 368(a)(1)(F) and where there is a downstream transfer of the common parent's assets. Sec. 1.1502–75(d)(2)(i) and (ii), Income Tax Regs.

to survive the reverse acquisition. Respondent interprets this provision as requiring that the acquiring corporation must be treated as the common parent agent not only for the filing of consolidated returns in post-acquisition taxable years, but also with respect to matters arising in connection with returns filed by the former common parent agent for taxable years that predate the acquisition.

Petitioners, in disputing respondent's interpretation, maintain that the "reverse acquisition" rule only applies to questions regarding continuity of affiliated status and to questions regarding limitations on carryovers. Section 1.1502–77, Income Tax Regs., they contend, exclusively governs the question of which entity succeeds the common parent as agent for the affiliated group.

We disagree with petitioners. We believe that the language in section 1.1502–75(d)(3)(i), Income Tax Regs.—"with the [acquiring] corporation becoming the common parent of the group"—clearly contemplates a metamorphosis of the acquiring common parent into the acquired common parent. Petitioners have not advanced any policy reason for limiting the extent to which the new common parent steps into the shoes of the old common parent under the reverse acquisition rule, and we fail to see any justification for doing so. Indeed, we find that respondent's interpretation has much to recommend it in terms of administrative simplicity. Accordingly, we hold that the reverse acquisition rule applies in determining which entity succeeds the common parent as agent for the affiliated group with respect to years both *before* and *after* the reverse acquisition.

It follows from our view of the scope of the operation of the rule that section 1.1502–75(d)(3), Income Tax Regs., effectively overrides section 1.1502–77, Income Tax Regs., with respect to a determination of the successor agent for preacquisition years following a reverse acquisition. Consequently, we need not consider the parties' arguments under section 1.1502–77, Income Tax Regs., and conclude that the statutory notice for the affiliated group was properly directed to new Southern Pacific, the successor common parent.

Petitioners have also alleged as a ground for dismissal for lack of jurisdiction that the notice of deficiency was in any event barred by the statute of limitations. Petitioners have

since abandoned this argument, recognizing that a claim as to the untimeliness of a deficiency notice is one that requires a determination on the merits and is not a ground upon which dismissal for lack of jurisdiction may be granted. *Badger Materials, Inc. v. Commissioner*, 40 T.C. 1061 (1963). In any event, petitioners' claim as to the untimeliness of the statutory notice is based upon the claim that new Southern Pacific was not the authorized agent of the group, and therefore had no authority to execute the March 1971 Forms 872. Given our holding to the contrary on the agency issue, we would not dismiss the petition on this ground even if untimeliness were considered a proper ground for dismissal for lack of jurisdiction.

Accordingly,

> *Petitioners' motion to dismiss for lack of jurisdiction will be denied.*