Union Oil Company of California, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 24054–90.　　　　　Filed July 28, 1993.

---

*Barry S. Andrews, Joseph A. Householder,* and *Michael R.H. Post,* for petitioner.

*Alan Summers* and *Joyce Sugawara,* for respondent.

OPINION

WRIGHT, *Judge:* This matter is before the Court on petitioner's motion to vacate the decision of this Court entered on December 1, 1992, pursuant to a stipulation of the parties. For the reasons set forth herein, we hold that the Court has jurisdiction over this matter and that petitioner's motion to vacate the decision of this Court entered on December 1, 1992, must be denied. The pertinent facts are not in dispute.

Petitioner was incorporated under the laws of California on October 17, 1890, and was, until April 25, 1983, the top-tier corporation of a group of affiliated corporations which included more than 80 subsidiaries. As the common parent, petitioner timely filed consolidated Federal income tax returns for taxable years 1975, 1976, and 1978. On April 25, 1983, petitioner was a party to a reverse acquisition specified in section 1.1502-75(d)(3)(i), Income Tax Regs. The plan of reorganization included two other corporations: (1) Unocal Corp. (Unocal), a Delaware corporation organized on March 18, 1983, and wholly owned by petitioner; and (2) Union

Merger Corp. (Union Merger), a California corporation organized by Unocal on March 21, 1983, which was the wholly owned subsidiary of Unocal. On April 25, 1983, Union Merger merged into petitioner; each share of Union Merger's stock held by Unocal was converted into a share of petitioner's stock, each share of petitioner's stock, except those now held by Unocal, was converted into a share of Unocal, and the shares of Unocal held by petitioner were canceled. References to the Union Group mean the group of affiliated corporations controlled by petitioner prior to the merger and then by Unocal after the merger.

As a result of the April 25, 1983, reorganization, Unocal became the common parent of the Union Group, and petitioner became a wholly owned subsidiary of Unocal. Beginning with taxable year 1983, Unocal has filed consolidated returns on behalf of the Union Group. In March 1985, Unocal filed an Application for Automatic Extension of Time to File Corporation Income Tax Return (Form 7004) for the taxable year ended December 31, 1983. On a statement attached to Form 7004, Unocal notified respondent that a merger and reorganization had occurred on April 25, 1983, and that petitioner had become a wholly owned subsidiary of Unocal.

Petitioner's existence did not terminate under California law during the reorganization or at any time thereafter. From April 25, 1983, to the present time, petitioner has continued as the principal domestic operating company of the Union Group, has retained many of its assets, and has utilized the same offices and mailing address in Los Angeles, California, as Unocal. From September 23, 1985, to the present time, petitioner has conducted its business operations as "d.b.a. Unocal". From 1983 to the present, the individuals who have served as chairmen of the board of directors, chief executive officers, directors, comptrollers, treasurers, general counsel, general tax counsel, and numerous other top-level positions for petitioner have served in those same capacities or held those same positions with Unocal.

On several occasions both before and after the reorganization on April 25, 1983, the general manager of petitioner's tax department, L.D. Lawrence, executed Forms 872 extending the date by which respondent could issue notices of deficiency to the Union Group for taxable years 1976 through

1981;[1] these forms identified "Union" as the taxpayer. On several occasions after the merger, petitioner's manager of its income tax division, T.L. Funk, executed Forms 872 for the Union Group for taxable years 1976 through 1982;[2] these forms identified "Union" as the taxpayer. On December 13, 1985, petitioner's general tax counsel, L.L. Wilson, executed a Form 872, which identified "Union" as the taxpayer, extending the date by which respondent could issue notices of deficiency to the Union Group for taxable years 1976 through 1982 until September 30, 1986.

On August 2, 1990, respondent issued a statutory notice of deficiency to petitioner for the Union Group for deficiencies in its income tax liabilities for taxable years 1975, 1976, and 1978. The notice of deficiency was mailed to petitioner at 1201 West 5th Street, Los Angeles, California 90017; on August 2, 1990, Unocal's address was the same. On October 26, 1990, a petition for redetermination of the deficiencies in income tax due from petitioner for 1976 and 1978 was filed by "Union Oil Co. of California, petitioner".[3] This Court entered a decision in this case on December 1, 1992, pursuant to a stipulation of the parties. On December 30, 1992,

---

[1] L.D. Lawrence executed the following consents:

| Years covered | Date signed | Form 872 expiry |
| --- | --- | --- |
| 1976 · | Feb. 21, 1980 | Mar. 31, 1981 |
| 1976, 1977 | Jan. 7, 1981 | Sept. 30, 1981 |
| 1976, 1977 | July 10, 1981 | Mar. 31, 1982 |
| 1976, 1977 | Jan. 21, 1982 | Sept. 30, 1982 |
| 1976, 1977, 1978 | June 22, 1982 | Mar. 31, 1983 |
| 1976, 1977, 1978 | Feb. 7, 1983 | Sept. 30, 1983 |
| 1976-1979 | June 14, 1983 | Mar. 31, 1984 |
| 1976-1979 | Feb. 2, 1984 | Sept. 30, 1984 |
| 1976-1980 | July 11, 1984 | Mar. 31, 1985 |
| 1979-1980 | July 11, 1984 | Mar. 31, 1985 |
| 1976-1981 | Jan. 11, 1985 | Sept. 30, 1985 |
| 1976-1981 | May 21, 1985 | Mar. 31, 1986 |

[2] T.L. Funk executed the following consents:

| Years covered | Date signed | Form 872 expiry |
| --- | --- | --- |
| 1976-1983 | July 17, 1986 | Sept. 30, 1987 |
| 1976-1982 | July 9, 1987 | Sept. 30, 1988 |
| 1979-1982 | June 29, 1988 | Sept. 30, 1989 |
| 1976-1978 | Mar. 17, 1989 | Mar. 31, 1990 |
| 1979-1982 | June 20, 1989 | Sept. 30, 1990 |
| 1976-1978 | Nov. 3, 1989 | Sept. 30, 1990 |
| 1976-1978 | Apr. 25, 1990 | Dec. 31, 1990 |
| 1979-1982 | May 1, 1990 | Sept. 30, 1991 |
| 1982 | June 11, 1991 | Dec. 31, 1992 |

[3] Petitioner did not petition for a redetermination of deficiencies in income tax for taxable year 1975.

petitioner filed a motion to vacate this decision on the basis that we lack jurisdiction over the instant matter.

The jurisdiction of this Court is generally invoked by the timely filing of a petition by a taxpayer to whom a notice of deficiency is addressed. Sec. 6213(a).[4] There are at least three prerequisites to this Court's exercise of jurisdiction: (1) A notice; (2) the determination of a deficiency in the notice; and (3) the transmittal of the notice to the taxpayer. *Intervest Enter., Inc. v. Commissioner*, 59 T.C. 91, 94 (1972). Petitioner argues that the petition herein must be dismissed because respondent failed to direct the notice determining deficiencies in the Union Group's income tax liabilities for the years at issue to the proper party. Specifically, petitioner maintains that the determination of deficiencies for the years at issue against petitioner as the common parent agent of the Union Group was erroneous because petitioner was not, pursuant to *Southern Pac. Co. v. Commissioner*, 84 T.C. 395 (1985), the agent authorized to act for the affiliated group with respect to matters concerning the premerger taxable years of the affiliated group.

In *Southern Pac. Co.,* we held that the new common parent in a reverse acquisition as specified in section 1.1502-75(d)(3)(i), Income Tax Regs., succeeds the old common parent as the agent for the affiliated group for purposes of the issuance of notices of deficiency for years both before and after the reverse acquisition.[5] *Id.* at 404. In *Southern Pac. Co.,* a common parent corporation of an affiliated group organized a holding corporation and a subsidiary to the holding corporation. In November 1969, these three corporations engaged in a reverse acquisition specified by section 1.1502-75(d)(3)(i), Income Tax Regs. After this reorganization, the holding corporation became the new common parent of the affiliated group, and the old common parent ceased to exist. The affiliated group thereafter notified the Internal Revenue Service (IRS) that it wished to designate the subsidiary cor-

---

[4]Unless otherwise indicated, all section references are to the Internal Revenue Code as amended.

[5]In 1988, the IRS issued temporary regulations under sec. 1502. Sec. 1.1502-77T, Temporary Income Tax Regs., 53 Fed. Reg. 34733-34734 (Sept. 8, 1988), provides essentially and inter alia that both the old common parent and the new common parent are deemed to be the agent for the group for purposes of mailing notices of deficiency and giving waivers of the statute of limitations when the corporation that is the common parent of the group ceases to be the common parent. T.D. 8226, 1988-2 C.B. 325, 327. Because this regulation is effective only for changes in the structure of affiliated groups after Sept. 7, 1988, it does not apply to the instant case.

poration as its agent pursuant to section 1.1502-77(d), Income Tax Regs. The IRS did not respond to that request, and on September 1, 1972, issued a notice of deficiency to the holding corporation as successor in interest to the old common parent for deficiencies in the income tax liabilities of the consolidated group for premerger years. The taxpayer filed a petition for redetermination with this Court and then a motion to dismiss for lack of jurisdiction on the basis that the notice of deficiency should have been issued to the designated subsidiary corporation.

We reached our decision in *Southern Pac. Co.* after analyzing the consolidated return regulations. Section 1.1502-77(a), Income Tax Regs., provides:

The common parent, for all purposes * * * shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability *for the consolidated return year.* * * * For example, * * * *notices of deficiencies will be mailed only to the common parent* * * * [Emphasis added.]

In *Southern Pac. Co.,* we recognized that section 1.1502-77(a), Income Tax Regs., is a general rule which provides that for any given year in which a consolidated return is filed, the entity that is the common parent for that particular year is the agent for the affiliated group with respect to any procedural matter that may arise in connection with the group's tax liability for that year. *Southern Pac. Co. v. Commissioner,* 84 T.C. at 401.

We further recognized in *Southern Pac. Co.* that if the old common parent ceases to exist after the filing of a consolidated return for a particular year, the affiliated group would be left with no agent to act on its behalf in any subsequent dispute over its liability for that particular year or for previous years. *Id.* at 401. We noted, however, that the consolidated return regulations address this problem in section 1.1502-77(d), Income Tax Regs., which provides the following:

(d) *Effect of dissolution of common parent corporation.* If the common parent corporation contemplates dissolution, or is about to be dissolved, or if for any other reason its existence is about to terminate, it shall forthwith notify the district director with whom the consolidated return is filed of such fact and designate, subject to the approval of such district director, another member to act as agent in its place to the same extent and subject to the same conditions and limitations as are applicable to the common parent. If the notice thus required is not given by the common parent, or

the designation is not approved by the district director, the remaining members may, subject to the approval of such district director, designate another member to act as such agent, and notice of such designation shall be given to such district director. Until a notice in writing designating a new agent has been approved by such district director, any notice of deficiency or other communication mailed to the common parent shall be considered as having been properly mailed to the agent of the group; or, if such district director has reason to believe that the existence of the common parent has terminated, he may, if he deems it advisable, deal directly with any member in respect of its liability.

The taxpayer in *Southern Pac. Co.* asserted that as the consolidated group had designated a new agent pursuant to section 1.1502-77(d), Income Tax Regs., this new agent was the proper entity to whom a notice of deficiency was to be issued for the consolidated group for premerger years. Among other things, the IRS contended that section 1.1502-75(d)(3)(i), Income Tax Regs., applied in determining who was the successor agent for the consolidated group after the reverse acquisition for years before and after the reorganization. Section 1.1502-75(d)(3)(i), Income Tax Regs., provides:

(3) *Reverse acquisitions—*(i) *In general.* If a corporation (hereinafter referred to as the "first corporation") or any member of a group of which the first corporation is the common parent acquires after October 1, 1965—

(a) Stock of another corporation (hereinafter referred to as the second corporation), and as a result the second corporation becomes (or would become but for the application of this subparagraph) a member of a group of which the first corporation is the common parent, or

(b) Substantially all the assets of the second corporation,

in exchange (in whole or in part) for stock of the first corporation, and the stockholders (immediately before the acquisition) of the second corporation, as a result of owning stock of the second corporation, own (immediately after the acquisition) more than 50 percent of the fair market value of the outstanding stock of the first corporation, then any group of which the first corporation was the common parent immediately before the acquisition shall cease to exist as of the date of acquisition, and any group of which the second corporation was the common parent immediately before the acquisition shall be treated as remaining in existence (*with the first corporation becoming the common parent of the group*). * * * [Emphasis added.]

We agreed with the IRS in *Southern Pac. Co.* and, as stated previously herein, held that the new common parent in a reverse acquisition succeeds the old common parent as the agent for the affiliated group for purposes of the issuance of notices of deficiency for years both before and after the

reverse acquisition. *Id.* at 404. We further held that in light of our holding on this issue, the reverse acquisition rule overrides section 1.1502-77, Income Tax Regs., with respect to a determination of the successor agent for preacquisition years following a reverse acquisition. *Id.*

In the instant case, petitioner contends that pursuant to *Southern Pac. Co.,* Unocal, as the new common parent after the reverse acquisition as specified in section 1.1502-75(d)(3)(i), Income Tax Regs., was the agent authorized to thereafter receive the notice of deficiency for the Union Group for the preacquisition years at issue. Respondent contends, however, that because the old common parent in *Southern Pac. Co.* no longer existed after the reverse acquisition as petitioner did in the instant case, our holding in *Southern Pac. Co.* should not apply to the instant case. In reaching our decision in *Southern Pac. Co.,* we specifically stated:

We believe that the language in section 1.1502-75(d)(3)(i), Income Tax Regs.—"with the [acquiring] corporation becoming the common parent of the group"—clearly contemplates a metamorphosis of the acquiring common parent into the acquired common parent. *Petitioners have not advanced any policy reason for limiting the extent to which the new common parent steps into the shoes of the old common parent under the reverse acquisition rule, and we fail to see any justification for doing so.* Indeed, we find that respondent's interpretation has much to recommend it in terms of administrative simplicity. Accordingly, we hold that the reverse acquisition rule applies in determining which entity succeeds the common parent as agent for the affiliated group with respect to years both before and after the reverse acquisition. [*Id.* at 404; emphasis added.]

It was not necessary for this Court or the parties in *Southern Pac. Co.* to address the concerns or policy reasons that may exist regarding the issuance of notices of deficiency to an affiliated group for preacquisition years if the old common parent continues to exist after the reverse acquisition. It is now necessary to address those concerns.

As authorized by the legislative mandate contained in section 1502, the Secretary adopted the general rule found in section 1.1502-77(a), Income Tax Regs., which provides that for any given year in which a consolidated return is filed, the "common parent" for that particular year is the agent for the affiliated group with respect to the issuance of a notice of deficiency for that year. As this regulation is legislative in

character, it has the force and effect of law. *Wolter Constr. Co. v. Commissioner,* 634 F.2d 1029, 1042 (6th Cir. 1980), affg. 68 T.C. 39 (1977); *Allstate Ins. Co. v. United States,* 329 F.2d 346, 349 (7th Cir. 1964); *First Chicago Corp. v. Commissioner,* 96 T.C. 421, 439 (1991). Implicit in our holding in *Southern Pac. Co.* is our recognition that the common parent of an affiliated group is the agent, pursuant to section 1.1502-77(a), Income Tax Regs., for the group for purposes of the issuance of a notice of deficiency pertaining to the group.

In *Southern Pac. Co.,* only one "common parent" existed within the meaning of section 1.1502-77(a), Income Tax Regs., to act as the affiliated group's agent for preacquisition years. Had the new common parent in *Southern Pac. Co.* not been designated the affiliated group's agent, the group would have been left with no agent authorized pursuant to section 1.1502-77(a), Income Tax Regs., to act on its behalf in any dispute over its tax liability for taxable years that preceded the termination of the old common parent's existence. If, as in the instant case, however, both the old and the new common parent exist after a reverse acquisition, two potential "common parents" exist as specified in section 1.1502-77(a), Income Tax Regs., to act as the affiliated group's agent.

The legislative history accompanying the consolidated return rules illustrates Congress' awareness and concern regarding the potential problems surrounding the issuance of notices of deficiency to affiliated corporations. The Senate report accompanying the Revenue Act of 1928, ch. 852, 45 Stat. 791, states:

Among the regulations which it is expected that the Commissioner will prescribe are: * * * (5) that the corporations filing the consolidated return must designate one of their members as the agent for the group, in order that all notices may be mailed to the agent, deficiencies collected, refunds made, interest computed, and proceedings before the Board of Tax Appeals conducted as though the agent were the taxpayer. [S. Rept. 960, 70th Cong., 1st Sess. (1928), 1939-1 C.B. (Part 2) 409, 419.]

The House report accompanying this bill states:

Section 141(f) is a new provision designed to take care of a situation, which arises in case of affiliated corporations, with respect to the statute of limitations. Under existing law the sending of a 60-day letter to one member of the affiliated group suspends the running of the statute of limitations as to that member but not as to the others. As a consequence, the statute may bar the assessment or collection of the amount properly

due from the affiliated group. It is highly desirable to provide that if a notice of deficiency in tax is sent to one member of an affiliated group, the statutes should be suspended as to the other corporations which joined with it in filing a consolidated return for the year in question. [H. Rept. 2, 70th Cong., 1st Sess. (1927), 1939-1 C.B. (Part 2) 384, 398.[6]]

The ability of corporations to file consolidated income tax returns is a privilege granted to affiliated groups for the purpose of recognizing, for tax purposes, the business entity as distinguished from the legal corporate entity of the business enterprise. S. Rept. 960, *supra,* 1939-1 C.B. (Part 2) at 418. As this committee report further states:

Many difficult and complicated problems * * * have arisen in the administration of the provisions permitting the filing of consolidated returns. * * * [*Id.,* 1939-1 C.B. (Part 2) at 419.]

If we were to adopt a rule excluding an existing old common parent as an agent for the affiliated group after a reverse acquisition for purposes of the issuance of a notice of deficiency for years during which it was the common parent, we would be promulgating an unnecessarily technical, impractical, and unfair rule. Additionally, this rule would not only be inconsistent with the plain language of section 1.1502-77(a), Income Tax Regs., but contrary to the spirit and underlying premise of the consolidated return regulations and insensitive to Congress' viable concern regarding the potential problems involved in issuing notices of deficiency to an affiliated group for purposes of collecting deficiencies in income tax properly due from an affiliated group.

We hold that, unlike the situation presented to this Court in *Southern Pac. Co. v. Commissioner, supra,* where the old common parent ceased to exist after a reverse acquisition, there is justification for limiting the extent to which the new common parent completely steps into the shoes of an existing old common parent in a reverse acquisition as the agent for the affiliated group for premerger years if the old common parent continues to exist after the merger. Designating the existing old common parent as an agent for the affiliated

---

[6] Sec. 6503(a)(2) partially addresses these concerns by specifically providing the following:

(2) CORPORATION JOINING IN CONSOLIDATED INCOME TAX RETURN.—If a notice under section 6212(a) in respect of a deficiency in tax imposed by subtitle A for any taxable year is mailed to a corporation, the suspension of the running of the period of limitations provided in paragraph (1) of this subsection shall apply in the case of corporations with which such corporation made a consolidated income tax return for such taxable year.

group for premerger years has the same to recommend it in terms of administrative simplicity as designating the new common parent. We hold, therefore, that if the old common parent in a reverse acquisition as specified in section 1.1502-75(d)(3)(i), Income Tax Regs., continues to exist after the reorganization, both the old common parent and the new common parent are agents for the affiliated group for purposes of the issuance of notices of deficiency for years before the reverse acquisition. We also herein reaffirm our holding in *Southern Pac. Co.* that if the old common parent in a reverse acquisition does not continue to exist after the reorganization, the new common parent succeeds the old common parent as the agent of the affiliated group for purposes of the issuance of notices of deficiency for years before the merger.

To reflect the foregoing,

*An appropriate order will be issued.*