# United States Tax Court

T.C. Memo. 2026-17

JULIET R. EL,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 15597-23.                    Filed February 10, 2026.

————

*Agata Papis*, for petitioner.

*Nikhil P. Nevrekar*, *John R. Neugebauer*, *Lisa M. Rodriguez*, and *Aaron M. Bailey*, for respondent.

## MEMORANDUM OPINION

NEGA, *Judge*: This case concerns a Notice of Deficiency issued to petitioner for the 2020 tax year. On September 17, 2025, respondent filed his Motion for Summary Judgment (respondent's Motion) arguing he erroneously adjusted petitioner's Additional Child Tax Credit (ACTC) causing issuance of an erroneous rebate refund to petitioner. On October 20, 2025, petitioner filed her Motion for Summary Judgment Embodying Petitioner's Opposition to Respondent's Motion for Summary Judgment (petitioner's Motion) arguing that because a mere computer or clerical error caused the adjustment there was no substantive recalculation of her ACTC and, therefore, the refund was a nonrebate refund.

The parties' competing Motions agree that the only issue necessary to decide in this case is whether, as a matter of law, the erroneous portion of the refund respondent issued was a rebate refund

[*2] or a nonrebate refund.  For the reasons set forth below we will grant respondent's Motion and deny petitioner's Motion.

*Background*

The following facts are derived from the pleadings, the Stipulation of Facts and the Exhibits attached thereto, and the parties' Motion papers and the Exhibits attached thereto.  They are stated solely for the purpose of deciding the parties' competing Motions and not as findings of fact in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

When she filed her Petition, petitioner was a resident of New Jersey; absent stipulation to the contrary, appeal of this case would lie to the U.S. Court of Appeals for the Third Circuit.  *See* § 7482(b)(1)(A), (2).[1]

In 2021 petitioner timely filed her Form 1040, U.S. Individual Income Tax Return, for the 2020 tax year.  She was assisted by a professional tax return preparer, J.J. Electronic Filing Service, in preparing her return.  Petitioner's income for the 2020 tax year consisted of $6,881 of wages or similar income and $16,623 of unemployment compensation.

Petitioner has one son, K.C., who was born in 2004 and was less than 17 years old in 2020.  Petitioner properly claimed K.C. as a qualifying child for the 2020 tax year.  Using Schedule 8812, Additional Child Tax Credit, she determined that she was eligible for an ACTC of $1,400 with respect to K.C.  She attached Schedule 8812 to her Form 1040 and claimed the credit in box 28.  She was not entitled to and did not claim any other dependents.  She also did not fail to report any additional dependents, deductions, credits, or payments on her return.

On her return petitioner calculated an initial amount of federal income tax due of $488 as recorded in box 16.  This was reduced to zero on the basis of her entitlement to the nonrefundable portion of the Child Tax Credit.  Petitioner additionally noted withholding of $958 reported in box 25d.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** Altogether, on her return petitioner reported an overpayment of $5,271, as reported in box 33, and requested a refund of that amount by direct deposit. This overpayment consisted of $4,313 of refundable credits reported in box 32 (consisting of $1,400 of an ACTC and $2,913 of an Earned Income Credit) and $958 of excess federal income tax withheld. Petitioner instead received a refund of $21,035 on or around March 24, 2021, via direct deposit. Of that amount, $15,764 was issued by respondent in error.

Petitioner's transcript shows that while processing her Schedule 8812, respondent's computer system adjusted the amount of ACTC calculated on the Schedule 8812. The computer determined that the amount of the ACTC that petitioner was entitled to was $17,164 (which corresponds to the amount of earned income reported by petitioner on her Schedule 8812). On the basis of this adjustment, respondent increased petitioner's total refundable credits to $20,077 and total overpayments to $21,035.

On July 21, 2023, respondent mailed to petitioner a Notice of Deficiency that determined a deficiency of $15,764. Included was Form 4549, Report of Income Tax Examination Changes, showing a total adjustments of zero, tax of zero, corrected tax liability of zero, total corrected tax liability of zero, and total tax shown on return or as previously adjusted of zero. The Form 4549 also shows a negative adjustment related to the ACTC of $15,764 that resulted in a balance due from petitioner in that amount.

On October 3, 2023, petitioner timely filed a Petition asserting that respondent erred in determining a deficiency.

*Discussion*

I. *General Principles*

A. *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and draw inferences therefrom in the light most favorable to the nonmoving party.

**[\*4]** *Sundstrand Corp.*, 98 T.C. at 520.  However, the nonmoving party may not rest upon mere allegations or denials of his pleadings but, rather, must set forth specific facts showing that there is a genuine dispute for trial.  Rule 121(d); *see Sundstrand Corp.*, 98 T.C. at 520.

The parties have stipulated the pertinent facts, and their competing Motions agree that the only remaining issue in this case is a matter of law.  We agree with the parties that this case is fit for summary adjudication.

B.      *Deficiency Formula*

Section 6211(a) defines a deficiency with the formula:

Deficiency = Tax Imposed − (Tax Reported + Prior Deficiency
Assessments − Rebates).

*See also Kurtzon v. Commissioner*, 17 T.C. 1542, 1548 (1952).  Where, as here, no prior deficiency assessments have occurred, we can simplify the formula to:

Deficiency = Tax Imposed − Tax Reported + Rebates.

*See Thomas v. Commissioner*, T.C. Memo. 2014-118, at \*6.  The terms "Tax Imposed," "Tax Reported," and "Rebate" are derived from section 6211.

As used here, "Tax Imposed" means the amount of tax required to be paid under subtitle A of the Code determined without regard to any estimated tax payments, certain prepayment credits, and some unusual circumstances permitting immediate assessments without notice.  *See* § 6211(a), (b)(1).  Under these same limitations, "Tax Reported" reflects the amount calculated and reported by taxpayers on the face of their returns.  *See* § 6211(a)(1)(A), (b)(1).

"Rebate," in turn, describes an adjustment made by the Commissioner when he finds (or believes he has found) a mismatch between the tax imposed and the tax reported, as described above, that favors the taxpayer.  *See YRC Reg'l Transp., Inc. & Subs. v. Commissioner*, T.C. Memo. 2014-112, at \*6.  Section 6211(b)(2) defines "Rebate" as so much of any abatement, credit, refund, or other repayment by the Commissioner to the taxpayer "on the ground" that the tax imposed is less than the amount shown on the return.  *See also Thomas*, T.C. Memo. 2014-118, at \*6.  When a taxpayer's mistake favors

[*5] the government, rebates provide the Commissioner with the means to ensure that the taxpayer pays only what the Code requires. *See LaRosa v. Commissioner*, 163 T.C. 32, 41 (2024) ("If the recalculation of tax liability is correct, the taxpayer may, of course, retain the [rebate] refund." (quoting *Acme Steel Co. v. Commissioner*, T.C. Memo. 2003-118, 85 T.C.M. (CCH) 1208, 1216)).

II.     *Framework of Rebate Refunds*

        A.     *Rebate Refunds and Nonrebate Refunds*

        Any time the Commissioner issues a refund to a taxpayer, that refund can take either of two forms: a rebate refund or a nonrebate refund. *See O'Bryant v. United States*, 49 F.3d 340, 342 (7th Cir. 1995); *LaRosa*, 163 T.C. at 41. Because a deficiency is defined to include any rebates issued, but not other refunds, that definition is the basis of the distinction between the two types of refunds. *O'Bryant*, 49 F.3d at 342; *see also* § 6211(b)(2). When the Commissioner mistakenly issues a rebate by misinterpreting the tax imposed on a taxpayer under the Code (i.e., he mistakenly believed the taxpayer owed less), the Commissioner has issued an erroneous rebate. *See YRC Reg'l Transp., Inc.*, T.C. Memo. 2014-112, at *6 ("[I]f the recalculation of tax liability is incorrect, the Commissioner *must* recover the erroneous refund." (Emphasis added.) (citing *Acme Steel Co*, 85 T.C.M. (CCH) at 1216)).

        The Code provides the Commissioner with two methods to recover erroneous rebate refunds he issues: either by filing a refund suit pursuant to section 7405 or by pursuing a supplemental assessment by following the deficiency procedures. *See LaRosa*, 163 T.C. at 40. The latter is available because the erroneous rebate refund gives rise to a deficiency that revives a tax liability, thereby permitting a supplemental assessment. *See United States v. Frontone*, 383 F.3d 656, 658–59 (7th Cir. 2004); *LaRosa*, 163 T.C. at 40 (citing *Greer v. Commissioner*, 557 F.3d 688, 691 (6th Cir. 2009), *aff'g* T.C. Memo. 2007-119); *see also* § 6204; Treas. Reg. § 301.6204-1. *But see Bilzerian v. United States*, 86 F.3d 1067, 1069 (11th Cir. 1996) (per curiam).

        In contrast, since nonrebate refunds do not fit within the definition of a deficiency provided by section 6211, the Commissioner is limited to a refund suit under section 7405 to recover those refunds. *See LaRosa*, 163 T.C. at 40–41; *YRC Reg'l Transp., Inc.*, T.C. Memo. 2014-112, at *6–7; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. The

**[\*6]** Commissioner cannot use deficiency procedures to recover a nonrebate refund.

  B.  *The Erroneous Refund*

  The parties agree that the erroneous refund is based on respondent's mistaken belief that petitioner's ACTC entitlement was $17,164 instead of the $1,400 petitioner claimed. They disagree about whether that mistake resulted in a rebate refund or a nonrebate refund.

  Underpinning both Motions is the parties' heavy reliance on *Thomas*, T.C. Memo. 2014-118, for support of their respective positions. In *Thomas* the Commissioner erred by shifting the amount the taxpayers reported as their taxable Social Security benefit into a different box on their Form 1040 designated for reporting gross Social Security benefits received. *See id.* at \*3–4. This Court found that the consequence of this mistake was issuance of a rebate refund to the taxpayers because the refund was based on a "substantive recalculation" of the taxpayers' tax imposed. *Id.* at \*7–8. This resulted in a deficiency equal to the amount of the Commissioner's erroneous rebate.[2] *Id.* at \*8–9.

  Petitioner points out that, unlike in this case, multiple steps occurred between the Commissioner's error and the recalculation of tax due that resulted in a rebate refund in *Thomas*. According to petitioner, the multiple steps present in *Thomas* show that the error was an intentional adjustment as opposed to the accidental error in the instant case. Following from this, in contrast to *Thomas*, she argues that here there is no indication that respondent "recalculated" the tax imposed while misprocessing her ACTC claim. In fact the Form 4549 would appear to confirm this by showing on line 11 that her "Total corrected tax liability" remained zero (the same as she reported on her return).

  Respondent argues that the adjustment in *Thomas* is analogous to the adjustment to petitioner's ACTC claim here because "in processing a different amount of additional child tax credit than was correct and reported by petitioner, respondent performed a recalculation of tax credit, i.e., tax amount, from $17,164.00 to $1,400.00 [sic]." As a

---

  [2] In other words, because the "Tax Imposed" term matched the "Tax Reported" term in the simplified deficiency formula, they offset each other. *See* § 6211(a). This left the deficiency as equal to the "Rebate" term in the formula. *See* § 6211(a)(2).

**[\*7]** result, he claims this is the substantive recalculation giving rise to a rebate refund.

Respondent and petitioner both make a fundamental error in analyzing whether a "substantive recalculation" occurred in this case. Both incorrectly direct their attention to whether the error (substituting $17,164 for the ACTC) was a "substantive recalculation" instead of whether the error led to a substantive recalculation of petitioner's tax imposed. *See id.* at \*7. Petitioner argues that a simple substitution error does not involve calculation at all and cannot be a "substantive recalculation." Respondent defends his mistake as a recalculation without offering any explanation more plausible than its being a mistaken transposition of numbers on the return (the $17,164 being listed elsewhere by petitioner as her earned income).

Without reaching the question of whether a transposition or substitution error is a "substantive recalculation," the record amply supports the position that respondent substantively recalculated petitioner's overall tax imposed. *See id.*; *see also YRC Reg'l Transp., Inc.*, T.C. Memo. 2014-112, at \*6. And this is the only correct place to direct the analysis: whether the taxpayer's tax imposed was recalculated.[3] *See, e.g.*, *O'Bryant*, 49 F.3d at 346; *LaRosa*, 163 T.C. at 41; *Thomas*, T.C. Memo. 2014-118, at \*7. A refund is a *rebate* refund if it is based on a "substantive recalculation" of the tax imposed that shows the taxpayer owes less tax than the amount shown on the taxpayer's return. *Thomas*, T.C. Memo. 2014-118, at \*7. In this case, the refund is a rebate refund because the rebate was based on a substantive recalculation of petitioner's tax imposed. *See id.*

III.  *The Misconception's Effect*

A.  *Refund Is a Rebate Refund*

Both parties point to descriptions of nonrebate refunds as computer or clerical errors as well as comparisons or contrasts with past nonrebate refunds examples. But while the Court has described erroneous refunds using the "rebate" or "nonrebate" terms, this has perhaps created an impression that "nonrebate" carries special meaning in and of itself. *See, e.g.*, *Acme Steel Co.*, 85 T.C.M. (CCH) at 1225

---

[3] Any attempt to cleave a line between "calculation" and "non-calculation" errors or "substantive" and "non-substantive" errors is futile and disconnected from the text of the statute, which defines a rebate as a refund issued only "on the ground" that the tax imposed should be lower than the tax reported. *See* § 6211(b)(2).

**[\*8]** ("Nonrebate refunds . . . are issued because of mistakes, typically clerical or computer error . . . ."); *see also, e.g.*, *LaRosa*, 163 T.C. at 43 ("The Fourth Circuit determined that the refund was a rebate because it was the result of a substantive recalculation of the tax liability and not the result of computer or computational errors."); *Interlake Corp. v. Commissioner*, 112 T.C. 103, 110 (1999) ("A nonrebate refund, however, is issued, not because of a determination by the Commissioner that the tax paid is not owing, but for some other reason, such as a mistake made by the Commissioner."); *YRC Reg'l Transp., Inc.*, T.C. Memo. 2014-112, at \*6 ("Nonrebate refunds . . . are often issued to taxpayers because of clerical or computer errors.").

A better description of the analysis is that a refund is either a rebate refund or it is not a rebate refund (defaulting to the catchall term "nonrebate refund"). *See LaRosa*, 163 T.C. at 43 ("[A] refund is not a rebate when it is not related to the recalculation of a tax liability."); *Galloway v. Commissioner*, 149 T.C. 407, 419 (2017) ("For a refund to meet the definition of 'rebate', it must rest on a determination that the tax imposed on a taxpayer is less than the tax shown on the taxpayer's return."). In other words, where courts have found that an erroneous refund was a nonrebate refund, the precise finding was rather that the refund was *not* a rebate refund. *See Lesinski v. Commissioner*, T.C. Memo. 1997-234, 73 T.C.M. (CCH) 2819, 2820 ("Application of the [deficiency formula] to an erroneous refund requires a determination of the basis of the refund, i.e., is it a rebate within the meaning of section 6211(b)[(2)]?"); *see, e.g.*, *LaRosa*, 163 T.C. at 44 ("Here, the erroneous refund was not a rebate because it did not involve any portion of the [taxpayer's] underlying tax liabilities for the years in issue."); *YRC Reg'l Transp., Inc.*, T.C. Memo. 2014-112, at \*11–12 ("The manual refund posting voucher shows that an IRS employee manually issued the second refund . . . . We note that neither [the taxpayer's] tax liability for tax year 1999 nor the amount of tentative carryback refund requested changed between September 30, 2009, when the first refund was issued, and April 2, 2010.").

Respondent is correct that, while conceding that a computer error is the root cause here, the mechanism of the error does not resolve the issue. All erroneous refunds are issued because of some mistake, computation, clerical, or otherwise; but before the Commissioner may invoke the deficiency procedures the critical question is whether there was a substantive recalculation of the tax imposed that gave rise to a rebate. *See LaRosa*, 163 T.C. at 42 (citing *Singleton v. United States*, 128 F.3d 833 (4th Cir. 1997)); *Lesinski*, 73 T.C.M. (CCH) at 2820 ("The

[*9] answer to this question depends upon what the refund herein represents. If it is a refund related to the recalculation of [a taxpayer's] tax liability, then it constitutes a rebate. If it is unrelated to a recalculation of [a taxpayer's] tax liability, then it is . . . a nonrebate refund.").

        B.     *Tax Imposed Is Negative*

Petitioner argues that no deficiency can be due from her because both her return and the Notice of Deficiency indicated that the amount of federal income tax determined for the 2020 tax year was zero. Thus she claims that no deficiency or recalculation is possible since her reported tax due and her corrected tax liability match. Petitioner's return and the Form 4549 accompanying her Notice of Deficiency do not contemplate negative amounts of tax; however, the deficiency formula does and supports a deficiency determination in this case.

In 1988 Congress enacted the Technical and Miscellaneous Revenue Act of 1988, Pub. L. No. 100-647, § 1015(r)(2), 102 Stat. 3342, 3572, expanding the definition of a deficiency to address the disallowance of refundable credits in certain situations. Congress's concern was that when the tax imposed after disallowance of a refundable credit was or remained less than zero, taxpayers were unable to challenge the disallowance in this Court. *See* H.R. Rep. No. 100-795, at 366 (1988); S. Rep. No. 100-445, at 387 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4515, 4897. By modifying section 6211(b)(4), Congress mandated that the designated refundable credits be treated as negative amounts of tax for purposes of calculating the tax imposed with respect to section 6211(a).

This change allows for their inclusion in the definition of a deficiency and permits application of the protections that process entails. *See Galloway*, 149 T.C. at 410–11 ("[T]he disallowance of refundable credits claimed by a taxpayer with no tax liability even after that disallowance would result in a deficiency because the tax imposed would be larger (that is, less negative) than the tax shown on the taxpayer's return."). As a result, the excess of the tax shown on a return over the amount of rebates made can result in a negative number where section 6211(b)(4) applies to treat certain refundable credits as negative amounts of tax for purpose of section 6211. *Galloway*, 149 T.C. at 412–14. This may occur when the Commissioner issues an erroneous rebate refund even when that amount is at all times less than zero. *See id.* at 415–16 ("[W]e hold . . . the excess of the tax shown on a taxpayer's

**[*10]** return over rebates made, for the purpose of computing a deficiency, can be a negative number . . . . [T]he excess of the tax shown on a return over rebates can be negative . . . when, as here, the Commissioner has made a rebate of a positive amount.").

Petitioner's tax imposed at all points was and is a negative number requiring the application of section 6211(b)(4) for purposes of evaluating any deficiency. Petitioner's understandable mistake, especially given the presentation on Form 4549, does not change the fact that it undermines the substance of her Motion. As a result, her Motion is fatally flawed, and we must deny it.

C.     *The Formula Applied Here*

Section 6211(b)(4) begins with, "For purposes of subsection (a)" and points to the portion of section 6211 that provides the formulaic definition of deficiency discussed above. It then provides two routes for purposes of the deficiency formula in which excess refundable credits "shall be taken into account as negative amounts of tax." § 6211(b)(4) (flush language).

Under section 6211(b)(4)(B), a negative amount of tax imposed arises from "any excess of the sum of such credits as shown by the taxpayer on [her] return over the amount shown as the tax by the taxpayer on such return (determined without regard to such credits)." This presents little challenge to calculate in this case, and the amount is negative $4,313 (zero federal income tax calculated on the return in box 24 less the $4,313 of refundable credits the parties agree petitioner is entitled to from box 32). Within the deficiency equation this amount should appear in the tax imposed and tax reported terms.

Under section 6211(b)(4)(A), the negative amount of tax imposed is "any excess of the sum of the credits allowable under sections 24(d) . . . [and] 32 . . . over the tax imposed by subtitle A (determined without regard to such credits)." Section 24(d) provides for the ACTC, and section 32 provides for the Earned Income Credit. The parties agree that petitioner is entitled to both. Respondent's error in setting petitioner's ACTC to $17,164 resulted from his belief, albeit mistaken, that the amount allowable to petitioner under section 32 should be increased by $15,764, and this belief would correspond to a negative tax imposed via section 6211(b)(4)(A). As a result, respondent issued a rebate to petitioner in this amount.

**[\*11]** Applying the deficiency formula to the agreed facts provides as follows:

|  | Tax Imposed | | Tax Reported | | Rebate | |
|---|---|---|---|---|---|---|
| Deficiency = | −$4,313 | − ( | −$4,313 | − | $15,764 | ). |

Simplifying, we are left with:

$$\text{Deficiency} = -\$4{,}313 + \$20{,}077 = \$15{,}764.$$

IV.    *Conclusion*

On the basis of the stipulated facts and application of the established law, there is no dispute of material fact in this case. Respondent substantively recalculated, albeit erroneously, petitioner's tax imposed for the 2020 tax year resulting in the issuance of a rebate refund to petitioner of the difference between his mistaken calculation and the amount petitioner reported. As a result, petitioner owes a deficiency of that error of $15,764.

We have considered all the arguments made by the parties and, to the extent they are not addressed herein, deem them moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order and decision will be entered.*